### THE ANTONIO ZAMBRANA.

(District Court, E. D. New York. July 11, 1898.)

1. WHARFAGE—STATUTORY CHARGES.
    When a vessel in charge of the marshal is sent to a wharf, without any contract as to the charges, the wharfinger is entitled to the maximum rate fixed by the state statute (Laws N. Y. 1877, c. 315).

2. CONSTRUCTION OF STATUTES—REGULATION OF CHARGES FOR PUBLIC SERVICE.
    When a statute states that for a given service a person having a public relation may charge a specific sum, he is entitled to receive such sum, in the absence of a contract for a less amount, though the actual market rates are much lower.

This was a petition by Mary A. Eldridge and others against the proceeds of the steamship Antonio Zambrana to obtain payment of wharfage.

Ward, Hayden & Satterlee, for claimant.

Alex. Van Wagoner, for petitioners.

THOMAS, District Judge. The petitioners ask the court to decree the payment of $205.11 from money arising from the sale of the steamship Antonio Zambrana, and now in the registry of this court, for the use of the petitioners' wharf while the ship was in the hands of the marshal, from the 13th of February to the 27th of March, 1893, being 43 days, at the rate of $4.47 per day. The ship is of 505 tons gross tonnage, and the rate charged is said to be the maximum rate allowed by chapter 315 of the Laws of New York for the year 1877. The evidence discloses that the charge is largely in excess of that made for similar services by the petitioners and others concerned in the business. This is important, as bearing upon the question of the fair market value of the services, if such question be involved. The petitioners contend that such usual or customary charges arise out of agreements, and hence are not evidence of market value. It appears, however, that agreements, with rare exceptions, are made; and therefore the sums which wharfingers are willing to accept, and shipowners are willing to pay, for wharfage, are the strongest indications of the value of the services. But it is urged by the petitioners that the court must not be governed by the market value, but, in the absence of agreement, by the highest rate permitted by the statute of the state. If this contention be correct, the statute fixes the amount which this court must order paid from its registry, whatever the relation thereof be to the services rendered, and however unconscionable the charge. In other words, it is urged that, in the absence of contract, the rates mentioned in the statute are the just market rates. The court is constrained, against its will, under the facts in this particular case, to interpret the statute in accordance with the petitioners' contention. When a statute states that for a given service a person having a public relation may charge and receive a specific sum, it does not lie in the power of another to assert that such person shall not charge and receive such sum for such service, but shall charge and receive a sum computed upon some other basis, or ascertained according to current or customary charges. The statute is supreme, and confers a right; and unless the person upon whom the right is conferred waives it, by contract or otherwise, a court is technically barred from declaring that the exercise of the right is unlawful. The statute is crude and ungrammatical, but it was the evident intent of the state to declare what should be due wharfingers for facilities afforded to vessels; and the fact that wharfingers, or even the wharfingers in question, do not customarily avail themselves of the statutory rates, does not estop the petitioners from claiming the benefit of the statute in any given instance, unless persons dealing with them have been misled by the previous conduct of the business. In the present case the ship was carried to the wharf and left with utter disregard of the expense of wharfage, and without any attempt to protect the money in the care of the court from the statutory charge by means of agreement, which is freely and usually made by wharfingers with their customers. Indeed, the evidence discloses that wharfingers seldom charge according to the statutory rates, for the simple reason that such rates are not the market rates, and no one will pay them, unless, from accident, ig-

norance, or design, he has failed to stipulate the rate. It is suggested that the obvious duty of making such an agreement be observed in the future by officers having vessels in charge. The explanation offered concerning the system of keeping his books, wherein the petitioners' superintendent has stated the rate of wharfage in this case to be $1.50 per day, is of doubtful credit; but there does not appear to be sufficient in such entry to enable the court to affirm that the petitioners have waived the right conferred by the statute.

It must be decided that the petitioners are entitled to the statutory rate for the wharfage furnished, but a decree therefor shall not be entered until the court shall have been furnished with the computation, and shall have approved the same. It is probable that the rate should be upon the registered, and not gross, tonnage. The Craigendoran, 31 Fed. 87. There will also be presented to the court a statement of the expenses of this proceeding, and it will be determined to what extent, if any, the fund in the registry of the court shall be further depleted on account of this claim, wherein the wharfingers, pursuing their technical right, have seen fit to discriminate in their charges against property in the care of this court.