NORTHWESTERN STEAM BOILER & MFG. CO. v. GREAT LAKES ENGINEERING WORKS.

(Circuit Court of Appeals, Eighth Circuit.   July 26, 1910.)

No. 3,148.

*(Syllabus by the Court.)*

1. CONTRACTS (§ 306*)—DAMAGES FOR DELAY IN PERFORMANCE NOT LOST BY UNEXERCISED OPTION TO COMPLETE.

An unexercised option to take possession of and complete contract work does not exclude the contractee from his right to recover damages for the delay of the contractor who finishes the work after the stipulated time.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1528; Dec. Dig. § 306.*]

---

2. DAMAGES (§§ 23, 45, 208*)—GENERAL AND SPECIAL—RULES FOR MEASURE-
MENT—FACTS—CONCLUSIONS.

Established rules which govern the recovery of damages for breaches
of contracts are:

(a) Those damages which are the natural and probable result of a
breach of a contract, those which the parties may reasonably anticipate
as the effect of the breach under the particular circumstances of the case
which are known to them when the contract is made, and those only, may
be recovered in an action upon a contract.

(b) In the absence of proof aliunde of knowledge by the defaulting par-
ty at the time the contract is made of special circumstances which make
other damages the natural and probable effect of a breach, such damages
only as are implied by the contract itself, such as would naturally flow
from its breach in the usual course of things, such as would reasonably
be anticipated by the parties to such contracts in the great multitude of
such cases, and such damages only, may be recovered.

(c) Proof of knowledge by the defaulting party at the time he makes
the contract of special circumstances which make damages other than
those implied by the contract, and naturally flowing from it, the natural
and probable effect of its breach, will warrant the recovery thereof.

The plaintiff which had agreed to build and deliver a steamship by a
certain time, to pay $100 per day for the first 10 days' delay, and $200
per day for any delay thereafter, notified the defendant of this contract
and especially of this stipulation to pay for delay, and that it should hold
the defendant liable for any damages its delay in furnishing two boilers
for this steamship caused and the defendant thereupon made a contract
with the plaintiff to construct and deliver these boilers within a time
fixed.   The defendant furnished them later, and its delay compelled the
plaintiff to pay the shipowner damages for the delay under the per diem
stipulation above quoted.

*Held*, the defendant was liable to the plaintiff for the damages it thus
caused.

(d) The defendant's plant was at Duluth where it built the boilers, and
it agreed to deliver them at Detroit, but failed either to complete them or
to deliver them within the time fixed, and the plaintiff claimed as dama-
ges expenses it paid for freight and marine insurance on the boilers from
Duluth to Detroit, for a place at a slip for, and the delay of the ship
which carried them, for laying up the new steamship after the boilers
were placed in it in order to complete them, and for their completion.

*Held*, the questions whether or not under the circumstances of this case
the delay of the defendant in completing and delivering the boilers was
the proximate cause of these expenses, whether or not they were neces-
sary, and the question of their amount, were within the province of the
jury, and were rightly submitted to them.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 54, 58, 62, 92–
98; Dec. Dig. §§ 23, 45, 208.*]

3. COURTS (§ 405*) — FEDERAL COURTS — APPEAL AND ERROR — ASSIGNMENT
SHOULD STATE SUBSTANCE OF EVIDENCE ERRONEOUSLY ADMITTED OR RE-
JECTED.

Rule 11 of this court[1] requires the assignment of errors to "quote the
full substance of the evidence admitted or rejected" when the error al-
leged is to the admission or to the rejection of evidence.   An assignment
of error in the admission of evidence contained in a writing that had
been marked by letter or number at the trial as an exhibit which specifies
the writing by the letter or number upon it only, and gives no informa-
tion of the substance or nature of the evidence it contains, is insufficient
under this rule.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1097; Dec. Dig.
§ 405.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
[1] 150 Fed. xxvii, 79 Fed. xxvii.

4. COURTS (§ 405*)—FEDERAL COURTS—APPEAL AND ERROR—BRIEFS MUST CITE PAGES OF RECORD WHERE RULINGS AND EXCEPTIONS ARE RECORDED, OR THEY WILL BE DISREGARDED.

Rule 24 of this court[2] requires the brief to contain a clear statement of the points of law or fact to be discussed with a reference to the pages of the record and the authorities relied upon in support of each point. The reference to the pages of the record required is to the pages where the rulings and exceptions, if any, which present the points, may be found as well as to the pages where the assignment of errors thereon are recorded.

Where counsel consider a point they present too trivial to inspire them to find and cite in their brief the place in the record where it was ruled upon and preserved by exception, the court will not ordinarily deem it of sufficient importance to require it to search out the record of the ruling and consider it.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1097; Dec. Dig. § 405.*]

5. EVIDENCE (§ 355*)—LIST OF EXPENSES VERIFIED BY COMPETENT TESTIMONY MAY BECOME ADMISSIBLE EVIDENCE OF DAMAGES.

A list of items of expenditures for materials, or labor, or services caused by the breach of a contract, may be so verified as to be admissible in evidence by the testimony of qualified witnesses that these materials were purchased and these services rendered, that they were necessary, that these witnesses knew their cost or value, and that at the times of their rendition they checked them on the list and found them to be correctly entered there, although the items were never entered upon any account book.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1488, 1489; Dec. Dig. § 355.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by the Great Lakes Engineering Works against the Northwestern Steam Boiler & Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

H. B. Fryberger (Sullivan & Grant, on the brief), for plaintiff in error.

W. D. Bailey (J. L. Washburn and Oscar Mitchell, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This writ of error challenges a judgment for damages for delay in the construction of two boilers for a steamship. The Great Lakes Engineering Works, a corporation, had agreed to complete and deliver a steamship to the Cleveland Cliffs Iron Company at Detroit, in the state of Michigan, on July 20, 1905, for $380,000, and to pay the Cliffs Iron Company for any delay beyond that date $100 per day for the first 10 days and $200 per day for any delay thereafter. Thereupon the engineering works made two contracts with the Northwestern Steam Boiler Manufacturing Company of Duluth, a corporation, for the construction and delivery of two boilers for the steamship. There was substantial evidence that before these contracts were made the engineering works informed the boiler company that it was liable to pay $100 per day for the first 10 days' delay after July 20, 1905, in the completion of

the steamship, and $200 per day for all delay thereafter, that it would hold the boiler company for these stipulated damages if the completion of the steamship was delayed by a failure of the boiler company to deliver the boilers in the time specified in the contracts and that with knowledge of and in view of these facts the boiler company made its agreements. By the first of these contracts the boiler company agreed in January, 1905, to construct and deliver the two boilers at the dock of the Engineering Works in Detroit on June 1, 1905, for $12,450. On June 17, 1905, the boilers were not completed, and the boiler company was in financial difficulty when the parties made a second contract that the boiler company transfer the title to the materials which it had assembled for the boilers and to the incomplete boilers to the engineering works, that the engineering works would pay for the materials and labor necessary to complete the boilers on the request of the boiler company, and would charge these payments against the purchase price thereof; that the boiler company would provide everything except the labor and materials for the completion of the boilers, and would deliver them finished at the shipyard of the engineering works in Detroit on or before July 15, 1905; and that the engineering works on becoming dissatisfied with the progress of the work or whenever it should become evident that the boilers would not be completed by the time specified had the right to enter the plant of the boiler company, to use that plant to finish the boilers, and to charge the expenses of their completion against the purchase price.

There was substantial evidence that the steamship was completed ready for the boilers on September 23, 1905, and that the boilers were not delivered until November 23, 1905. On account of this delay, for which it was claimed that the boiler company alone was responsible and on account of other delays in completing the steamship, the engineering works was compelled to pay, and did pay, to the Cliffs Iron Company, $13,300, and in this action it sought to recover of the boiler company, among other things, $6,000 on account of this delay. At the close of the trial, the court below denied a request of the boiler company to instruct the jury that the engineering works was not entitled to recover anything upon this claim for damages for delay, and this denial is the subject of the most serious complaint of the trial of this case below.

Counsel contend that the provision of the contract of June 17, 1905, that the plaintiff below had the right to enter the plant of the defendant, to use it to complete the boilers, and to charge the expenses thereof against the purchase price whenever it became evident that the defendant would fail to complete the contract on time, furnish the only measure of damages for any delay of the boiler company recoverable under this agreement. If the contract had never been completed, and if the plaintiff was seeking in this action to recover speculative damages measured by the difference between the estimated cost of a completion that was never effected and the contract price, this argument might be worthy of more serious consideration. American Surety Company v. Woods, 105 Fed. 741, 106 Fed. 263, 45 C. C. A. 282; Hunt v. Oregon Pacific Railway Com-

pany, 36 Fed. 481, 1 L. R. A. 842. But in the case in hand the boiler company made an absolute covenant to complete and deliver the boilers on a certain day. With the requested aid of the engineering works, it did complete and deliver them at a later day. Familiar rules of law and definite facts measure the damages for this delay and the fact that the plaintiff had an option, which it never exercised, to take possession of the plant of the defendant and to complete the work the boiler company had undertaken to do, did not deprive the engineering works of its right to recover these legal damages. An unexercised option to take possession of contract work and finish it in case of delay does not deprive a contractee of his right to recover damages for the delay in finishing it of a contractor who completes it after the day specified for its completion.

In support of the denied instruction, counsel argue and cite authorities which to them seem to support their views to the effect that the amount of $100 per day for the first 10 days' delay and $200 per day for delay thereafter, is so out of proportion to the price of the boilers and to the profit of the boiler company upon their construction that it could not have been in the contemplation of the parties that the boiler company should pay this amount unless it expressly agreed to do so, or unless it contracted so to do impliedly by reason of notice to it that it would be held liable for these damages, or unless the whole transaction showed that the boiler company consented to become liable therefor. The questions raised by these contentions are not novel. They have been exhaustively considered and discussed, and have been repeatedly decided by this court. A reconsideration of them in the light of the authorities cited by counsel for the boiler company has served but to confirm our opinion that these are the rules of law applicable to this issue of the measure of damages:

(1) Those damages which are the natural and probable result of a breach of a contract, those which the parties may reasonably anticipate as the effect of the breach under the particular circumstances of the case which are known to them when the contract is made, and those only, may be recovered in an action upon a contract. Rockefeller v. Merritt, 22 C. C. A. 608, 617, 76 Fed. 909, 918, 35 L. R. A. 633, and cases there cited.

(2) In the absence of proof aliunde of knowledge by the defaulting party at the time the contract is made of special circumstances which make other damages the natural and probable effect of a breach, such damages only as are implied by the contract itself, such as would naturally flow from its breach in the usual course of things, such as would reasonably be anticipated by the parties to such contracts in the great multitude of such cases, and such damages only, may be recovered. Drug Co. v. Byrd, 92 Fed. 290, 34 C. C. A. 351; Railroad Co. v. Bucki, 16 C. C. A. 42, 46, 68 Fed. 864, 868; Hadley v. Baxendale, 9 Exch. 341, 354, 356; Primrose v. Telegraph Co., 154 U. S. 1, 29, 14 Sup. Ct. 1098, 38 L. Ed. 883; The Ceres, 19 C. C. A. 243, 72 Fed. 936, 943; Boyd v. Brown, 17 Pick. (Mass.) 453, 461; Ingledew v. Railroad, 7 Gray (Mass.) 86, 91; Railway Co. v. Mud-

ford, 48 Ark. 502, 3 S. W. 814, 816; Kempner v. Cohn, 47 Ark. 519, 527, 1 S. W. 869, 58 Am. Rep. 775.

(3) Proof of knowledge by the defaulting party at the time he makes the contract of special circumstances which make damages other than those implied by the contract, and naturally flowing from it, the natural and probable effect of its breach, will warrant the recovery thereof. Boutin v. Rudd, 27 C. C. A. 526, 82 Fed. 685; Central Trust Co. v. Clark, 34 C. C. A. 354, 92 Fed. 293, 297; Accumulator Co. v. Dubuque Street Ry. Co., 12 C. C. A. 37, 64 Fed. 70, 78; McDonald v. Kansas City Bolt & Nut Co., 79 C. C. A. 298, 149 Fed. 360, 365, 8 L. R. A. (N. S.) 1110; Iowa Mfg. Co. v. B. F. Sturtevant Co., 89 C. C. A. 346, 162 Fed. 560, 462, 18 L. R. A. (N. S.) 575.

In the case last cited, the very question in hand, the question whether or not one who contracted to furnish machinery for a builder who was, with knowledge of the contractor when he made his agreement, liable to pay $25 per day for any delay in completing the building, was liable to pay these damages for such delay caused by his failure to furnish the machinery at the stipulated time, was argued, considered, and decided, and in our opinion rightly decided in favor of the builder.

There was evidence in the case at bar for the consideration of the jury to the effect that, before the contracts in suit were made, the boiler company was notified that the engineering works was liable for $100 per day for the first 10 days' delay in the completion of the steamship and for $200 per day for any delay thereafter, and that, if by its failure to complete and deliver the boilers at the time fixed by the latter contract it caused such a delay in the completion of the steamship, the engineering works would hold it liable for those damages. In the absence of evidence to the contrary, these damages appear to have been moderate and reasonable. They were stipulated to be the damages for the loss of the use of a steamship worth $380,000, and they do not appear to have had any of the attributes of a penalty. The conclusion is that there was no error in the refusal of the court to instruct the jury that the boiler company was not liable for that portion of these damages which it caused the engineering works to suffer.

When the boilers were delivered at Detroit on November 23, 1905, they had not been completed or tested. They were placed in the steamship which was awaiting them, a trial trip was made, and it was then found that the boilers were leaking, and that considerable work must be done upon them before they would be fit for use in propelling the ship in the practical work of navigation. There was substantial evidence that it was necessary to do this work while the boilers were in the steamship, that it was so late in the season whey they were received that it was necessary to lay up the ship for the winter in order to carry on this work, and that the engineering works was compelled to go to the expense of about $955.73 in laying up the ship and to the expense of $8.74 for car fare of the men engaged in this work and to repaint a portion of the ship in order to properly complete the boilers. In the completion of this work it assisted the boiler company,

The latter company sent one of its employés from Duluth to Detroit to superintend and to labor at this work, which was finished about February 10, 1906.

Counsel insist that there was fatal error in the trial of this case, in that the court submitted the plaintiff's claim for these items to the jury when they were not pleaded and when they were too remote and inconsequential to form the basis of legal injury. After the verdict, the court below required the plaintiff to reduce, and it did reduce, its judgment by the amount which it claimed for the repainting, so that the question concerning that item is no longer at issue. Counsel for the plaintiff in error set forth in their brief a copy, taken from their assignments of error, of certain specifications of error upon which they say that they rely, and they add at the end of some of them the pages of the record where the rulings they question may be found while no pages are stated at the end of others. At a subsequent page in the brief, they present their point upon the lack of pleading, and cite by number only 19 of these specifications of error that they claim raise the questions of the submission of the items here challenged to the jury. At the expense of considerable time, we have examined each one of these 19 specifications by turning back from the place where this point is made in the brief to the copied specifications in the earlier part of the brief, finding there the numbers of the pages in the record and then reading those pages to ascertain how, when, and where this objection, on the ground that these items were not pleaded, was made and ruled. We fail to find in any page of the record so specified any objection to the admission of the evidence of these items on the ground that they were not pleaded. We do find, however a statement in the specifications that the court was requested to instruct the jury that they could allow the plaintiff no item of damages not included in those pleaded in the complaint, and also a statement that the court was requested to charge the jury that there could be no recovery upon these items. But we find no reference to any page of the record on which this or any other request found in these 19 specifications, or any exception to a refusal to give any of them appears in the record and this record contains 486 printed pages. It seems to us that this brief fails to comply with rule 24 of this court which requires "a brief of the argument exhibiting a clear statement of the points of law or fact to be discussed with a reference to the pages of the record and the authorities relied upon in support of each point." The reference to the pages of the record required where rulings on the trial are challenged are to the pages where the rulings made and the exceptions taken were recorded (Sipes v. Seymour, 76 Fed. 116, 118, 22 C. C. A. 90), as well as to those where the assignment of the errors was recorded. A reference to 19 different specifications of error to present the point that two items were submitted to the jury without pleading, imposing upon the court the labor of hunting through the pages of the record named at the end of each specification in vain for any objection or exception founded upon the point suggested, impresses the mind forcibly with the fact that this point was not deemed of very serious import by the counsel presenting it. If earnest objection had been

made when the evidence upon these items was first presented that they were not pleaded, the court might, and probably would, have permitted the plaintiff to amend its complaint and to plead them, and, if the judgment should now be reversed for this failure of pleading and a new trial should be ordered, it is probable that the court below would allow such an amendment before that trial could be had. As counsel do not seem to have deemed this objection of sufficient importance when they made their brief to hunt through this record and clearly point out the place therein where the objection upon this ground was made and an exception was taken to the decision overruling it, this court declines to search it out, if it may be found, and to reverse this judgment on account of it. Where counsel for the plaintiff in error considers a point they urge too trivial to warrant them in finding and citing the specific place in the record where it was presented and preserved by exception, the court will not deem it of sufficient importance to require it to search that place out. Hoge v. Magnes, 85 Fed. 355, 358, 29 C. C. A. 564, and cases there cited.

Moreover, many of the 19 specifications which relate to the admission of evidence regarding these items, notably numbers 52, 54 and 62, which challenge the admission of exhibits C, C–1, C–2, C–3, C–5, C–6, and C–7, present no suggestion of the character or the substance of the evidence they contain, and thus fail to raise in this court the question of their admissibility because the specifications do not "quote the full substance of the evidence admitted or rejected" as required by rule 11. It is not intended to so interpret this rule as to make it burdensome upon practitioners. It was not necessary that counsel should have inserted in these specifications the entire exhibits or any large part of them. A statement of the nature or substance of the evidence they contained in two or three lines would have been sufficient. But a mere reference to the exhibits by their numbers gives the court no indication of the character of the evidence and is a disregard of both the letter and the spirit of the rule. For these reasons the trial of this case may not be, and in our opinion ought not to be, set aside because the items of the expense of laying up the steamship and of paying the car fare of the laborers were not specifically pleaded.

Were these items so remote and inconsequential that they could not form the basis of legal injury? If the boilers had not been completed until the spring of 1906, the damages for the delay in completing them at the rate of $200 a day would have run on by the terms of the contract through the winter. There was substantial evidence that the boilers could not be finished before the winter arrived, and it was necessary to lay up the ship before that time in order to protect it and to complete the work upon the boilers. The expense of laying up the ship and of paying the car fare of the laborers was much less than the stipulated damages for an extended delay in the finishing of the boilers. It is an established fact, of which the boiler company had full notice when it made its contracts, that it is necessary to lay up a steamship on the Great Lakes when it has once been placed in the water before the freezing weather of

winter comes. The necessity of laying up this ship for the purpose of completing the boilers therein was the natural and necessary effect of the boiler company's delay in completing them, and in our opinion the expenses thereof and the car fare of the laborers employed in the work of laying up the ship to complete the boilers were not too remote or inconsequential to form a basis for the recovery of damages for the delay.

Complaint is made that the court submitted to the jury evidence that the plaintiff paid $1,000 for the carriage of the boilers from Duluth to Detroit, $520 for marine insurance on them on their trip down the lakes, $125 to the captain of the steamer Boyce which carried the boilers to reimburse him for money he paid to the captain of another boat to induce him to vacate a slip at Duluth in order to enable the boiler company to commence loading the boilers earlier, $1,500 to the steamer Mary Boyce to induce her to wait on her last trip down the lakes in the fall of 1905 until the boiler company could load the boilers upon her, and $2,554.55, to complete the boilers after they arrived at Detroit. But the boiler company had contracted to finish these boilers and to deliver them at Detroit. The engineering works and the boiler company were liable to pay $200 per day for delay in this completion and delivery, and a review of the record convinces that there was substantial evidence that all these expenses were necessary, that they were the natural and probable effect of the boiler company's disastrous delay, and that it was the province of the jury to determine the questions whether or not the boiler company's delay was the proximate cause of the payment of these expenses by the engineering works, whether or not they were necessary expenses to secure an early completion of the boilers and what the amounts of these expenses were. There was no error in the submission of the evidence upon these questions nor in the submission of these issues to the jury.

The next alleged error is that the court granted the motion of the plaintiff to strike out a portion of the answer of the boiler company wherein it pleaded excuses for its delay in the construction of the boilers prior to June 17, 1905, the date of the second contract. But the second contract was in writing. It was concise in expression and clear in meaning, and by its terms it fixed the measure of the boiler company's obligation at the completion and delivery of the boilers at Detroit on July 15, 1905. All previous oral negotiations for the construction and delivery of these boilers were merged in this agreement; and all previous delays and damages were thereby waived or released so that the excuses for these earlier delays set forth in the stricken portion of the answer were immaterial, and were rightly removed from it by the order of the court.

The sixth point in the brief of counsel for the boiler company is that the construction of this contract of June 17, 1905, and the entire theory on which this case was tried below, were fundamentally wrong, that the true effect of that agreement was to make the boiler company the agent of the engineering works to finish the boilers, that its only obligation was to furnish its shop, tools, and superintendence, for which it was to receive the difference between the

cost of the boilers and their price, $12,450, if the cost was less than that sum, while it was to receive nothing if the cost was more than that sum. It is assigned as error that the court below sustained a demurrer to two counterclaims of the defendant founded on this theory and excluded evidence in support of them—one for materials and the other for labor furnished by the boiler company in the manufacture of the boilers. Let us consider the situation and circumstances of the parties at the time they made this June agreement and the provisions of that contract, and see if its true meaning can be that the engineering works thereby made the boiler company its agent to complete these boilers. The boiler company was bound under the contract of January, 1905, to finish these boilers and to deliver them at Detroit on June 1, 1905, for $12,450. It had assembled a large part of the materials for and had commenced the construction of them, but it had not advanced far toward their completion when this second agreement was made. It was then in financial difficulty, and feared suits by its creditors and the seizure of these materials and the incomplete boilers by some process of the court. In this state of facts, it made this written contract with the engineering works in which the foregoing facts were recited and which contain these terms: The boiler company conveyed the boilers and the materials to the engineering works. It agreed to furnish everything except the labor and materials for the completion of the boilers and to superintend and push the work thereon to completion in accordance with the specifications of the January contract, except that the boilers were to be delivered complete at Detroit on or before July 15, 1905, instead of on June 1, 1905, and that the engineering works might take and use its plant and tools to finish them in case of unreasonable delay. The engineering works agreed to pay for the materials necessary to finish the boilers and to pay for such of the labor thereon as the boiler company should request it to pay for and after the boilers passed inspection to pay to the boiler company the difference between the amounts the engineering works expended for labor and materials and the contract price of the boilers. It agreed to pay for this labor and materials directly to the parties furnishing it, or that these payments might be made by the boiler company as its agent, and proper vouchers taken and immediately turned over to it. The contract contained a stipulation that the January agreement should be modified thereby, and it contained no other provisions material to the question under discussion. As the contract expressly made the boiler company the agent of the engineering works in the single instance of its payment for materials and labor, this provision, under the familiar rule that the expression of one excludes another, forbids the implication that it was its agent in any other respect. The provision of the contract that the engineering works should pay to the boiler company in addition to the cost of the materials and the labor the difference between that cost and the purchase price of the boilers is inconsistent with the theory that the contract of purchase was avoided and the relation of agency established, and, when the two contracts are read together and all the parts of each are given due consideration, as they must be to ascertain the true meaning

of the parties in the later one, the conclusion is irresistible that their intent and meaning was that the boiler company agreed to complete and deliver the boilers at Detroit by July 15, 1905, and the engineering works contracted to pay for them by paying for the materials and labor and then paying to the boiler company the difference between the amount of those payments and the purchase price. This was the construction of this agreement upon which the court below tried the case, sustained the demurrer to the counterclaims and excluded the evidence in support of them, and there was no error in that interpretation or in those rulings.

Counsel argue that the court erred because it admitted in evidence exhibits C, C–1, C–2, C–3, C–4, C–5, C–6, and C–7, and they cite specifications 52, 54, 58, and 62 of their assignment of errors as the basis of their contention. These specifications are defective, but we have examined the exhibits which are itemized statements of the plaintiff's claims and the evidence concerning them and are of the opinion that there was no error in their admission because many, if not all, of the items they contain were verified by witnesses who personally knew that the work there specified was done, who knew its value and who testified to the effect that they saw it done by the engineering works, that it was necessary in order to properly complete the boilers, that it was of the value or of the cost stated in these exhibits, and that at the time it was done they checked these items over on these exhibits and found them to be correct. The objection here urged to the exhibits is that they were not the books of account of the engineering works so verified as to be admissible as such under the Minnesota statute. Let that fact be admitted, nevertheless, one who knew that items of labor or service written out on a list were actually rendered, who knew their cost or value and who checked them on the list at the time they were rendered and found them to be correctly listed might lawfully testify to those facts and thereby make the list admissible in evidence for the consideration of the jury, although the items were never entered upon any books of account. In that way these exhibits, at least to the extent of the items so verified, were rendered admissible in evidence, and it would have been prejudicial error to have excluded them. It is said that the court erred because it refused to grant the request of the defendant below to instruct the jury that they could not allow the plaintiff any recovery on account of an item of $600 attorney's fees set forth in the complaint. But there is no reference in the brief to the place where this request and the exception to its refusal may be found in the record, there was no substantial evidence in support of this item of $600, and an examination of the record satisfies beyond doubt that no prejudice could have resulted from the failure to grant the request.

Counsel for the plaintiff in error have presented 107 specifications in their assignment. All those upon which they assert reliance in their brief or argument have been examined and considered and those of substantial importance have been discussed. This discussion and the decision of the questions treated therein have disposed of many minor questions presented by specifications not quoted, and

the conclusion is that the record discloses the fact beyond doubt that there was no prejudicial error in the trial of this case below, and that the judgment there rendered must be affirmed.