LAMON et al. v. SPEER HARDWARE CO.

(Circuit Court of Appeals, Eighth Circuit. July 22, 1912.)

No. 3,530.

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 323*)—NECESSARY PARTIES—INTEREST.

All parties to joint judgments and decrees alike interested in their reversal must join in an appeal or writ of error, or be detached from the right to review them by some proper proceedings, or by their renunciation.

But when the interest of a defendant is separate from that of other defendants he may appeal or sue out a writ of error without them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1798–1805; Dec. Dig. § 323.*]

2. APPEAL AND ERROR (§ 323*)—DEBTORS IN AFFIRMED JUDGMENT FOR ATTORNEY'S BOND—SURETIES—JOINDER WITHOUT NOTICE—NECESSARY PARTIES TO APPEAL OF EACH OTHER.

The interest of the original debtors in a judgment which affirms a judgment below against them and, without suit on their supersedeas bond, joins the sureties on that bond with them in the affirming judgment without legislative authority so to do, is so separate and different from the interest of the sureties in that affirming judgment that the latter are not necessary parties to the writ of error to review it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1798–1805; Dec. Dig. § 323.*]

3. PRINCIPAL AND AGENT (§§ 99, 103*)—APPARENT AUTHORITY—SALE OF MACHINERY—PROMISE TO OPERATE.

A principal is as conclusively bound to innocent third parties by the acts of his agent in the exercise of the apparent authority within the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

scope of his agency with which his master clothes the agent as he is by the actual authority he confers upon him.

B., the agent of A. to sell a cotton gin plant and appurtenant machinery, agreed with the purchaser, in order to make the sale, to set it up and put it in running order.

*Held,* upon a consideration of the evidence, that there was substantial testimony for the consideration of the jury of the apparent authority of the agent to make the promise and of the fact that he made it.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 254–261, 278–293, 353–359, 367; Dec. Dig. §§ 99, 103.*]

4. DAMAGES (§ 23*)—BREACH OF CONTRACT—REMOTENESS.

In the absence of proof aliunde of knowledge by the defaulting party at the time the contract is made of special circumstances which make damages other than those that are the natural and probable effect of the breach likely to flow, such damages only as are implied by the contract itself, such as would naturally flow from its breach in the usual course of things, such as would reasonably be anticipated by the parties to such contracts in the great multitude of such cases, and such damages only, may be recovered.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 58–62; Dec. Dig. § 23.*]

In Error to the Circuit Court of the United States for the Eastern District of Oklahoma.

Action by the Speer Hardware Company against W. A. Lamon and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with instructions to grant a new trial unless plaintiff remit a specified sum from the judgment; otherwise affirmed.

See, also, 190 Fed. 734, 111 C. C. A. 462.

N. B. Maxey (George F. Haid and Maxey, Campbell & Beall, on the brief), for plaintiffs in error.

James F. Read (James B. McDonough, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

SANBORN, Circuit Judge. The Speer Hardware Company, a corporation, sued W. A. Lamon and J. W. Wallace for the purchase price of a cotton gin and other machinery and recovered a judgment of $8,073.82 on April 2, 1906, in the United States Court for the Western District of the Indian Territory. The defendants sued out a writ of error from the United States Court of Appeals in the Indian Territory to reverse this judgment and gave a supersedeas bond dated September 29, 1906, with A. C. Miller, Fred Walker, B. A. Brunson, John W. Gibson, and William C. Edwards as sureties. The United States Court for the Eastern District of Oklahoma, to which this case had been transferred under legislation enacted subsequent to the rendition of the judgment, affirmed the judgment below in the year 1910 and rendered a judgment against Lamon and Wallace that the judgment of the court below was affirmed, that it appeared that that judgment against them below was for $8,073.82, that the interest thereon was $2,159.42, that it also appeared that they had executed a super-

sedeas bond with A. C. Miller, Fred Walker, B. A. Brunson, John W. Gibson, and William C. Edwards as sureties, and that the Speer Hardware Company was entitled to $807.30 damages, and that the Speer Hardware Company should recover of all these parties $11,039.72 and costs. Thereupon Lamon and Wallace sued out a writ of error without joining the sureties and at the September term, 1911, this writ was dismissed on the ground that the sureties were necessary parties to the writ, and that they had not been separated from the right to review the judgment by any proper proceeding, or by renunciation. Lamon et al. v. Speer Hardware Co., 190 Fed. 734, 111 C. C. A. 462. At the December, 1911, term of this court its attention was first called to the fact that the liability of Lamon and Wallace under this judgment is conditioned by their liability to pay for the merchandise which they bought to the amount of the judgment against them in the court of the Indian Territory, while the liability of the sureties is measured by the bond and by the jurisdiction of the United States Circuit Court to render a judgment against them without suit upon the bond or notice to them of the contemplated judgment, for the record discloses neither of these in this case. When these facts came to the attention of this court, it set aside the dismissal of the writ of error on the ground that the sureties were not necessary parties to it because their interest therein was separate from that of Lamon and Wallace. At the final hearing at this term counsel for the Speer Hardware Company renewed and again argued their motion to dismiss the writ, and that motion has again been considered.

[1] The rule upon this subject is stated by the Supreme Court in these words:

"The rule which requires parties to a judgment or decree to join in an appeal or writ of error, or be detached from the right by some proper proceeding, or by their renunciation, is firmly established. But the rule only applies to joint judgments or decrees. In other words, when the interest of a defendant is separate from that of other defendants he may appeal without them." Winters v. United States, 207 U. S. 564, 574, 28 Sup. Ct. 207, 210, 52 L. Ed. 340.

[2] The liability of Lamon and Wallace to pay the judgment below depends entirely upon their liability to pay for the machinery for the purchase price of which this suit was brought. It is not in any way dependent upon the supersedeas bond. On the other hand, if the bond had not been given by the sureties, or if the court below was without jurisdiction to render a summary judgment against them on the bond, they are not bound by its judgment. A statement of the course of legislation pertinent to the liability of the sureties here may make the relative interests of these parties more evident.

Prior to March 3, 1905, appeals to the Court of Appeals of the Indian Territory were governed by the laws of Arkansas set forth in Mansfield's Digest (Act March 1, 1895, c. 145, § 11, 28 Stat. 693, 698). Those laws provided that a supersedeas should be allowed upon the giving of a bond conditioned "that the appellant shall pay to the appellee all costs and damages that shall be adjudged against the appellant on appeal; also that he will satisfy and perform the judgment

or order appealed from in case it should be affirmed, and any judgment or order which the Supreme Court may render, or order to be rendered by the inferior court, not exceeding in amount the original judgment or order, and all rents or damages to property during the pendency of the appeal, of which the appellee is kept out of possession by reason of the appeal" (Mansfield's Digest, § 1295); and that upon the affirmance of a judgment, order, or decree, judgment should be entered up against the sureties, and the court should award execution thereon (section 1312). White v. Prigmore, 29 Ark. 208. But on March 3, 1905, Congress enacted that thereafter all appeals and writs of error should be taken from the United States courts in the Indian Territory to the United States Court of Appeals in the Indian Territory "in the same manner as is now provided for in cases taken by appeal or writ of error from the Circuit Courts of the United States to the Circuit Court of Appeals for the Eighth Circuit." Act March 3, 1905, c. 1479, 33 Stat. 1081, § 12; Morrison v. Burnette, 154 Fed. 617, 620, 83 C. C. A. 391. The condition of the supersedeas bond required in such cases is simply that the plaintiff in error "shall prosecute his writ or appeal to effect and if he fail to make his plea good shall answer all damages and costs." Revised Statutes, § 1000; U. S. Comp. Stat. 1901, p. 712. The bond in the case before us was not given under the laws of Arkansas, but it was given on September 29, 1906, under and in the form prescribed by these laws of the United States. On November 16, 1907, the Indian Territory became a part of the state of Oklahoma, the laws of Arkansas ceased to operate therein (Moore v. United States, 85 Fed. 465, 468, 29 C. C. A. 269), and when, on September 19, 1910, the judgment here challenged against the sureties was rendered, the laws of the United States and of the state of Oklahoma were in force therein.

No law of the state of Oklahoma has been called to our attention which empowers any court of that state to render a judgment against sureties on a supersedeas bond without a suit against them upon the bond, except in cases of appeals to the district courts from probate courts and courts of justices of the peace (Compiled Laws of Oklahoma, § 6398), so that there does not appear to have been any authority to enter the judgment below under the Act of Conformity (Revised Statutes of United States, § 914 [U. S. Comp. St. 1901, p. 684]). There is no act of Congress which expressly authorizes such a judgment, and while cases may be found where, upon a notice of motion, or an order to show cause duly served upon the sureties, such judgments have been rendered under the Act of Conformity where a state statute empowered the courts of the state to follow that practice (Egan v. Chicago Great Western Ry. Co. [C. C.] 163 Fed. 344, and cases there cited), no case has challenged attention where a judgment against sureties on a supersedeas bond without any suit upon it against them, without any notice to the sureties of the contemplated judgment and without express legislative authority to enter it without such notice, has ever been sustained. The record in this case discloses such a judgment, a judgment that appears by this record to be coram non judice and void as to the sureties. And the conclu-

sion is that the interest of the original debtors in a judgment which affirms a judgment below against them and, without suit on the bond, or notice of the contemplated judgment to the sureties on the debtors' supersedeas bond, joins them in the judgment against the debtors without legislative authority so to do, is so separate and different from the interest of the sureties in that judgment that the latter are not necessary parties to the writ of error of the original debtors to review it and the motion to dismiss the writ is again denied.

[3] Returning to the merits of the case: At the close of the argument in this court counsel for Lamon and Wallace, the defendants below, and counsel for the Speer Hardware Company, the plaintiff below, stated that the only questions to be considered by this court were whether or not the court below had erred in withdrawing any of the counts of the counterclaim in the answer from the jury. One of the causes of action of the plaintiff was for the unpaid balance of the purchase price of a cotton gin plant, which included a 70-horse Nagle Engine, an 80-horse Nagle Boiler, a 4-70 Lumus Saw Huller Gin System R. H. Pneumatic Distributor, Cleaning Feeders, 1-40 Unloading Fan and Separator, shafting, pulleys, belting, and other machinery. The price of this machinery was about $4,700, and the ninth count of the defendants' answer was that it was one of the terms of the contract of purchase of this plant that the plaintiff should furnish plans and specifications for it and for the building to contain it, and should set it up and put it in good running order, that the plaintiff provided the plans and specifications, the defendants constructed the building in accordance with them, the plaintiffs set up the plant and machinery therein but could not make them operate properly, that thereafter the defendants were compelled to and did expend $3,015.14 in rearranging the building, tearing out and replacing the machinery under the direction of an agent of the plaintiff whom it sent to put the machinery in proper running order and make it satisfactory. The testimony on the subject of this counterclaim was conflicting. Fred C. Kobel was conceded to be the agent of the plaintiff to sell the machinery. He and Mr. Speer testified that he had no authority to agree to furnish plans and specifications or to agree to set up the machinery, or to agree to put it in good running order. But he did in fact furnish the plans and specifications, and he went to the defendants' place of business and spent about 30 days setting up the machinery, and tried in vain to make it operate properly. A month or two after the machinery had been started, Mr. D. Speer went to the place where it was located, examined the plant, and he testified that he told Mr. Lamon that it was too late then to undertake anything that season and that when the season was over the plaintiff would try to adjust the matter satisfactorily. A Mr. Wills, who was present, and Mr. Lamon and Mr. Walker, each testified that at that time Mr. Speer said that the plaintiff would fix the plant up and make it satisfactory the next year.

A principal is as conclusively bound to innocent third parties by the act of his agent in the exercise of the apparent authority within the scope of his agency with which his master clothes him as he is by

the actual authority conferred upon him. Dysart v. M., K. & T. Ry. Co., 122 Fed. 228, 230, 58 C. C. A. 592, 595; Chicago, St. Paul, Mpls. & Omaha Ry. Co. v. Bryant, 13 C. C. A. 249, 253, 65 Fed. 969, 973; Mechem on Agency, § 283; Austrian & Co. v. Springer, 94 Mich. 343, 349, 54 N. W. 50, 34 Am. St. Rep. 350; Butler v. Maples, 9 Wall. 766, 19 L. Ed. 822; Foster v. Railway Co. (C. C.) 56 Fed. 434, 436; Inglish v. Ayer, 79 Mich. 516, 44 N. W. 942. It is within the scope of the agency of one authorized to sell a cotton gin plant to agree for his principal, in order to sell it, to set it up and put it in running order, and Kobel's agency to sell the plant and the other evidence to which allusion has been made were sufficient to carry to the jury the question of his apparent authority to make such an agreement.

The witnesses Walker and Lamon testified that the latter told Kobel that he knew nothing about the gin plant, that he would buy it if Kobel would furnish the plans and specifications, put up the machinery, and make it run, and Kobel agreed to do so. Upon this issue of the terms of the contract Kobel testified that he never made any agreement to make the plans and specifications, to set up the machinery, or to put it in running order, and there were therefore two witnesses that the contract claimed by the plaintiff was made, and the facts that the plaintiff after the sale sent his agent to the defendants' place to set it up, and that after it was started it promised and endeavored to make it satisfactory.

The gin was started the last of September, 1901; there was substantial evidence that it would not operate properly; about the 15th or 20th of October, Mr. Speer went to the defendants' place of business and examined the plant, ordered a new set of suction pipes, and promised to fix it the next season. The next season a Mr. Johnson went to the defendants' place of business, overhauled and rebuilt the plant, and on his orders the defendants paid the expenses thereof, which amounted to $3,015.14; but they paid Mr. Johnson nothing. The plaintiff furnished to the defendants a new engine in place of that which it had sold to them the year before, and it also furnished to them a new boiler. But Mr. Speer testified that the plaintiff sold them the new boiler and agreed to allow them $700 for the old boiler on condition that they would pay what they owed. He also testified that Mr. Johnson was a man sent to the defendants at the plaintiff's request by Lumus & Sons Gin Company, the manufacturers of the plant, to look over the machinery, under a custom that if the machinery was found defective the Gin Company would pay, and if it was found without defects the Speer Hardware Company would pay the expense of sending the agent. He testified further that the plaintiff authorized Mr. Johnson "to go up there and look the machinery over and do anything he could to assist them and get the matter in good condition," but that he gave him no authority from the plaintiff to change the buildings, or to buy machinery, or to buy attachments, or to do anything more than to overhaul the machinery. After Mr. Johnson had examined the plant, he returned with Mr. Lamon to Mr. Speer and had a conversation with him in which Lamon testified that Johnson told Mr. Speer that the old boiler positively was not of suffi-

cient capacity to furnish the steam that would be required of the plant and there would have to be a larger boiler, and Mr. Speer "told him that if it was necessary it was all right, that he wanted the plant made satisfactory and to go ahead and use his own judgment and fix it in any way that it could be fixed, to make it a first-class plant," and that thereupon Johnson rebuilt the plant, and the defendants, on his orders, paid the $3,015.14 for the materials and labor to do it. There is testimony in this record which tends to contradict or to modify many of the statements of the witnesses which have been recited. Nevertheless, there was certain substantial, though not conclusive evidence here of Johnson's authority to order the work and the materials for the plaintiff in order to make the plant satisfactory, and that on his orders the defendants paid for this work and for these materials on behalf of the plaintiff, so that the questions whether or not Johnson had authority from the plaintiff to do these things, and whether or not the defendants paid for the work and materials on the orders of Johnson for the plaintiff should have been submitted to the jury. The result is that the answer of the defendants states facts regarding their claim for the $3,015.14 sufficient to constitute a counterclaim and that there was substantial evidence in support of it, so that it was error to withdraw that claim from the jury.

A careful reading of the testimony has also convinced that there was substantial evidence at the trial in support of the seventh count of the answer to the effect that the defendants were compelled to and did pay $50 to hire men to handle the cotton during the year 1911, because the plaintiff failed to furnish and set up the machinery for unloading the cotton as it had agreed to do.

[4] No error has been discovered in the refusal to submit to the jury the counterclaims set forth in the third, fourth, sixth, eighth, ninth, tenth, and eleventh counts of the answer. The damages claimed in these counts, which were not submitted to the consideration of the jury, were not the natural or probable effect of a breach of the contract, and no notice that they would or might be caused by such a breach was given to the plaintiff before or when the contract was made. They are therefore too remote and are not recoverable under the established rule that in the absence of proof aliunde of knowledge by the defaulting party at the time the contract is made of special circumstances which make damages other than those that are the natural and probable effect of the breach likely to flow, such damages only as are implied by the contract itself, such as would naturally flow from its breach in the usual course of things, such as would reasonably be anticipated by the parties to such contracts in the great multitude of such cases, and such damages only, may be recovered. Central Trust Co. v. Clark, 92 Fed. 293, 297, 34 C. C. A. 354, 358; Northwestern S. B. & M'f'g. Co. v. Great Lakes E. Works, 181 Fed. 38, 42, 43, 104 C. C. A. 52, 56, 57. Nor was there any error in the submission of the claims set forth in the counts of the answer to which reference has not been specifically made. The result is that the judgment below must be reversed and the case must be remanded to the proper court below with instructions to grant a new trial, unless plaintiff within

45 days from the date of the filing of this opinion shall remit from the judgment below $3,065.14 principal, interest thereon at 6 per cent. per annum from the 8th day of May, 1903, to the 2d day of April, 1906, the date of the first judgment, interest on the amount of the foregoing principal and interest from April 2, 1906, until September 19, 1910, the date of the second judgment, and the $807.30 penalty included in said judgment, shall reduce and satisfy that judgment to the extent of the aggregate of these amounts and shall file in this court a certified copy of such remittitur and satisfaction, in which event, but not otherwise, the remainder of the judgment below will be affirmed. Let the plaintiffs in error recover their costs in either event.