## THE ALLAN WILDE.

### CENTRAL TRANSPORTATION CO. v. COMMERCIAL SHIPPING CORPORATION.

### CARIBBEAN SHIPPING CO., Limited, v. SAME.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

Nos. 149, 150.

1. **Corporations ⚙⟶399(4)—Acts of agent and officer within scope of apparent authority bind corporation.**

The acts of an agent of one corporation and the officer of another, in engaging space on a pier for a ship, were binding on their respective companies, when within the scope of their apparent authority.

2. **Corporations ⚙⟶409—Fixing price incident to authority to engage space for ship.**

Where an agent of one corporation and an officer of another had apparent authority to engage space for a ship on a pier the fixing of the price was an incident of such authority.

3. **Wharves ⚙⟶17—Statute prescribing rates does not prevent agreements for greater rates.**

Greater New York Charter, § 859, prescribing rates that may be charged any vessel using or making fast to any pier, wharf, or bulkhead, etc., and section 863, providing for the recovery of treble damages for receiving rates in excess of those authorized, do not prevent a shipowner and the owner or lessee of a privately owned pier from fixing a higher rate by mutual agreement.

4. **Wharves ⚙⟶1—Privately owned wharf may be reserved for private use.**

A privately owned wharf may be reserved for the private use of its owner or lessee, even though it exists on the shore of a navigable river or lake, or in the harbor of a city, from which access is obtained directly to the sea.

5. **Statutes ⚙⟶218—Acquiescence by parties interested strong evidence of interpretation.**

That owners of vessels have acquiesced in the understanding that a statute prescribing rates chargeable to vessels using or making fast to any pier does not prohibit agreements for a higher rate is strong evidence of its proper interpretation.

Appeals from the District Court of the United States for the Eastern District of New York.

Two libels were filed, by the Central Transportation Company and the Caribbean Shipping Company, Limited, respectively, against the schooner Allan Wilde, her tackle, etc.; the Commercial Shipping Corporation claimant. The libels were sustained. 255 Fed. 171. Claimant in each case appeals. Affirmed.

Macklin, Brown & Purdy, of New York City (Pierre M. Brown and William F. Purdy, both of New York City, of counsel), for appellants.

Stuart McNamara, of New York City (Raymond B. Seymour, of New York City, of counsel), for appellee Caribbean Shipping Co.

David F. Barnett, of New York City, for appellee Central Transportation Co.

⚙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. These actions were tried together and decrees were granted for libelant in each. The question of law involved in each action is the same. They were both argued together, and will be here treated in one opinion.

Pier 2, known as the Empire Stores in Brooklyn, was leased to the Central Transportation Company for the months of January and February, 1918. It was a privately owned, covered pier about 375 feet long and 45 feet wide. The schooner Allan Wilde had a berth on the south side of the pier for 12 days, commencing January 29, 1918. The libel in this case is filed to recover compensation for this occupancy of such berth. The Central Transportation Company sues on an agreement for hire at the rate of $75 per day. The appellant denies the existence of such an agreement, admitting that an agent arranged for the berth, but contending that he had no authority to make the agreement at a hire of $75 a day. It contends, further, that such an agreement is illegal under the statute hereinafter referred to.

[1, 2] One Novelly was the agent referred to, and it was he who made arrangements for this berth for the Allan Wilde. There is ample evidence to justify the conclusion reached below that the price of $75 a day was agreed upon. The believable evidence warrants the assertion that Mr. Novelly, acting on behalf of the Phœnix Shipping Company, wrote to the Overseas Shipping Company, binding the former company to pay $100 a day for this berth. The Overseas Shipping Company engaged the berth from the appellee Central Transportation Company at the rate of $75 a day, and this was affirmed in writing by a letter of January 25, 1918. The hiring at this price was agreed upon with Mr. Hurd, superintendent of the Overseas Shipping Company, in Mr. Novelly's office. Mr. Sugarman, an officer of the appellant, Commercial Shipping Corporation, was present in the office of the Phœnix Shipping Company with Mr. Novelly in January, when Mr. Novelly negotiated with Mr. Hurd for space on this pier for the ship. What Novelly and Hurd did was within the scope of their apparent authority as agents of their respective companies. That their employers were bound by their acts as against innocent third parties flows from the authority conferred upon them. Lamon v. Speer Hardware Co., 198 Fed. 453, 119 C. C. A. 1. The fixing of the price as Novelly did was an incident of such authority. Jenkins & Reynolds Co. v. Alpena Portland Cement Co., 147 Fed. 641, 77 C. C. A. 625.

Pier 3, Empire Stores, at the foot of Jay street, Brooklyn, in the month of December, 1917, and January, 1918, was in the possession of the appellee Caribbean Shipping Company, Limited, as lessee. This pier was 295 feet long and 115 feet wide. It was privately owned and was known as the Jay Street Terminal. Novelly, as agent for the appellant, hired this pier at the rate of $100 per day. It was contracted for use for 13 days, to wit, December 22 to December 24, 1917, and

January 18 to 27, 1918, each inclusive. This contract is evidenced by letters of December 17 and 24, 1917, and January 18, 1918.

The schooner came into the pier January 20 and remained until January 27, 1918; thus the pier was occupied for only 8 days, although engaged for 13. The space, however, was reserved under the contract, for the schooner, for the days it was not occupied. The agency of Novelly and his authority to act was fully established. It is clear that the ship had the benefit of the contract, and actually occupied the pier for 8 days, and now seeks to absolve itself from this indebtedness upon the theory that, because of chapter 466 of the Laws of 1901 (section 859 of the City Charter), the rate therein named, to wit, $4.95 per day, is the only charge that may be made for such use of the pier. This is the contention of the appellant in answer to both libels. The question is therefore presented of whether the parties are bound by this provision of the City Charter, or whether the parties may agree, lawfully, to pay a higher rate of hire. Section 859 of the City Charter provides:

"It shall be lawful to charge and receive, within the city of New York, wharfage and dockage at the following rates, namely: From every vessel that uses or makes fast to any pier, wharf, or bulkhead, within the said city, or makes fast to any vessel lying at such pier, wharf, or bulkhead, or to any other vessel lying outside of such vessel, for every day or part of a day except as hereinafter provided, as follows: * * * For every vessel over 200 tons burden 2 cents per ton for each of the first 200 tons burden, and one-half of 1 cent per ton for every additional ton. * * * *"

"Sec. 863. * * * Any person owning or having charge of any pier, wharf, bulkhead, or slip as aforesaid, who shall receive for wharfage any rates in excess of those now authorized by law, shall forfeit to the party aggrieved treble the amount so charged as damages, to be sued for and recovered by the party aggrieved."

[3, 4] The statute above referred to was passed in 1857. During the period that the piers were used by the schooner as a wharf, the European war had increased shipping so extensively that pier space was in great demand. There was testimony adduced at the trial which fixed the reasonable rental value at from $200 to $300 per day. Fixing the price therefor at $100 per day, if legal authority existed so to do, was not immoderate. Under such circumstances, the appellant's plea for payment of $4.95 a day for this wharfage should not be sustained unless the statute in question is all compelling. We cannot believe that the purpose of the statute was to fix or regulate, to the exclusion of the right by mutual agreement between shipowner and pier owner or lessee, the price for such hire. These were privately owned piers of very substantial size. Such a private wharf, so constructed and leased, may be reserved for private use, and may remain so, even though it may exist on the shores of a navigable river or lake, or in the harbor of a city from which access is obtained directly to the sea. Louisville, etc., R. R. Co. v. West Coast Naval Stores Co., 198 U. S. 483, 25 Sup. Ct. 745, 49 L. Ed. 1135.

The effect of section 863 was considered in the state court in Murphy v. Voorhis, 10 Daly, 457. There an action for treble damages for a violation of section 963—the penalty being fixed under section 859—was based on the ground that the owner charged more than the wharfage rate fixed by this section. It was a pier in the city of New

York on the East River. A canal boat had lain at the bulkhead unloading, and the charge was made in excess of the amount fixed by the section. A judgment was granted in favor of the defendant in that action; the court saying that recovery under section 859 could not be had, because the plaintiff failed to show that the bulkhead was within that class of bulkheads to which the act of the Legislature fixes dockage and wharfage charges, is applicable. The court said that the plaintiff had offered in evidence to show that the upland was a highway, or that he was entitled to pass over it without the defendant's permission, for the purpose of reaching the bulkhead. It was said:

"If, in point of fact, it was necessary for him to obtain the defendant's leave to cross over the upland, and if he agreed to pay, and did pay, for such permission, he cannot recover the money so paid. Extortion in wharf charges, not extortion for licenses to pass over private property contiguous to a river, is the act which it is the design of the statute to punish. The plaintiff failing to prove what kind of a bulkhead this was, and also failing to prove that he had a right to cross over the defendant's upland without leave, there was no evidence on which the justice could have given judgment in his favor."

In Woodruff v. Havemeyer, 106 N. Y. 129, 12 N. E. 628, where there was considered section 862 of the City Charter, which fixes the charges of storage of goods, etc., on piers, wharf, or bulkhead at 5 cents a ton, the defendant refused to pay a charge fixed by a written agreement, contending that he had the right to rely upon the provision of the statutes, and that the written agreement was not binding. It was held that the statute cannot be construed to prohibit the owner of a private wharf from entering into a contract for the landing and deposit of goods upon his wharf upon such terms as may be agreed upon between himself and the owner of the goods, and that it could not be construed as requiring the owner to store goods for any period of time without compensation, and that intention of the Legislature by this enactment was not to exercise such an exceptional power as to prohibit the making of valid agreements fixing such hire.

In International Hide Co. v. New York Dock Co., 93 App. Div. 562, 87 N. Y. Supp. 886, it was held that under section 862 of the Charter the owner of the wharf could make a contract for the use of the wharf for the first 24 hours, and, if no contract was made, can recover on the implied contract the reasonable value for the use of the wharf. This was a dock in the city of New York.

Regarding compensation for wharfage, in Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373, which arose in the Eastern District of New York, the Supreme Court held that under the Constitution a charge for wharfage was within the admiralty and maritime jurisdiction, and that compensation for wharfage may be claimed upon an express or implied contract according to the circumstances, but, where a price is agreed upon for use of the wharf, a contract furnishes the measure of compensation, and that, when the wharf is used without any such agreement, the contract is implied, and the proprietor is entitled to recover what is just and reasonable for use of his property and the benefit conferred.

In the Easton Case, the section of the City Charter was not considered by the Supreme Court. The question was considered in The Antonino Zambrana (D. C.) 88 Fed. 546, in the District Court for the Eastern District of New York. It was held that the statute (Laws of New York 1877, c. 315) fixing a charge for use of a wharf at the rate of $4.47 per day applied only in the absence of a contract wherein the rates were fixed. We think that section 859 of the City Charter must be similarly construed, and that it applies only in the absence of express contract. Standing alone, it authorizes the charge fixed by the statute in the absence of such express contract. The Legislature intended by this section to avoid extortion of claims made for wharfage where no express contract exists.

As determined in Ex parte Easton, supra, a lien exists which subjects a vessel to arrest and permits the wharfinger to arrest and make demand for excessive claims, where a vessel ties up to his pier for a period, and where there is no agreement made as to such use of the wharf. In such a case, he might arrest her for unreasonable demand and compel the owner to pay rather than to give the necessary bond. Section 863 was intended to require him to advise the owner of the limit of his legal charge and to put him upon the penalty of treble damages if he charged more.

[5] This understanding of the statute seems to have been acquiesced in by all owners of vessels in port, and to us is strong evidence of its proper interpretation. McKeen v. Delancy, 5 Cranch, 32, 3 L. Ed. 25; Pennel v. P. & R. Ry. Co., 231 U. S. 675, 34 Sup. Ct. 220, 58 L. Ed. 430; Matter of City of New York, 217 N. Y. 1, 111 N. E. 256; City of New York v. N. Y. City Railway Co., 193 N. Y. 543, 86 N. E. 565.

We conclude, therefore, that this section of the City Charter does not prevent an express agreement for rent of this private pier.

Decree affirmed.