## SCOW NO. 15.

### (District Court, S. D. New York.   April 4, 1898.)

WHARFAGE—STATUTORY RATES—SCOWS.

Under the classification of vessels by the New York statute prescribing different rates for wharfage, *held*, that scows should be classed with "barges," and charged at the same graded rates.

Alexander & Ash, for libelant.
Peter S. Carter, for claimant.

BROWN, District Judge.   The libel was filed to recover statutory compensation for wharfage for 26 days in September and October, 1896, under the New York statute of 1882 (Consolidation Act, § 798). The scow was of 302 tons measurement, and was engaged in carrying stone from 134th street, North river, to Glen Cove, Long Island Sound. The libelant claims wharfage at the rate of two cents per ton for the first 200 tons, and half a cent per ton for 102 tons above 200, in accordance with the first clause of section 798.   The claimant contends that this clause is not applicable to the scow in question, and also that the libelant as lessee of the wharf covenanted to observe all rules and regulations prescribed by the dock department, as respects rates of wharfage, which it was alleged allowed but 50 cents a day for such boats.

On the trial, though there was evidence of a practice to some extent on the part of the city to charge such boats only 50 cents a day, no evidence could be produced or found of any rule or regulation of that kind.   The libelant is, therefore, entitled to charge statutory rates.

Section 798 does not provide any rate to be charged for the wharfage of scows, under that specific name.   Section 799 relates only to vessels engaged in the clam or oyster trade; and section 800, to canal boats or vessels engaged in freighting brick on the Hudson river. Neither of the latter sections has any application to this case.   Returning, therefore, to section 798, it will be observed that it makes provision for three groups or classes of vessels:

(1) "Every vessel of 200 tons burden and under, two cents per ton; and for every vessel over 200 tons burden, two cents per ton for each of the first 200 tons and one-half of one cent for every additional ton"; except

(2) "Vessels known as North River barges, market boats and barges, sloops employed upon the rivers and waters of this state, and schooners exclusively employed upon the rivers and waters of this state," which are charged a graded rate; the rate for vessels of between 300 and 350 tons is $1.25 per day.

(3) "Every vessel or floating structure other than those above named or used for transportation of freight or passengers, double the first above rates, except floating grain elevators, which shall pay one-half the first above rate."

Looking at the various provisions of this section, as well as the two following sections, I am of the opinion that the scow in question should be classed with the second group.   It does not belong to the third group, for the reason that the scow was used for the transportation of freight; and not to the first group, for the reason that that class seems designed to embrace the ordinary vessels engaged in com-

· 88 F.—20

merce and navigation that are complete in themselves, and not the subsidiary and inferior class of vessels that have no motive power of their own and are dependent upon other vessels for their navigation.

Scow 15 had no masts or motive power of her own. Considering that every other kind of inferior craft has a lower rate expressly prescribed by the statute, there is at least a general presumption that the larger plenary rate was not intended to be imposed upon scows, which belong to the most inferior and helpless class. The libelant contends that the words "every vessel" include scows, because scows are not expressly excepted. But I am not satisfied that the term "barges" in the second group may not properly be held to include "scows." The evidence does not show any such precise signification in the general term "barges" as to exclude scows. The statute uses these two terms "North River barges" and "barges." This shows that the word "barges" has both a narrower and a more general sense. The North River barges are a superior and specific class to which evidently this scow would not belong. But the terms "market boats and barges" seem to be used in a very general sense. The evidence as to the kind of boats which might be included under these terms is not very precise. The libelant's witness, Darrow, though he calls this boat a scow, says a scow is larger than some barges. He says that "they are both built on the same plan, and both take their cargo in the same way." The libelant, on the other hand, says a barge has always an overhanging guard and a small hull, while this (scow) carries all her load on deck with no guard. But the context indicates that he is speaking of a "North River barge," which is a special kind of barge. The claimant says that this scow is known as "a ballast scow or barge"; and that it is of the same build as brick scows, which are chargeable only at the rate of 50 cents per day.

That the words "every vessel" in the first group were not intended to apply universally except to those vessels specifically excepted in group 2, must be inferred from the language of group 3, which provided a still different rate for "every vessel or floating structure other than those above named."

Classing the scow in question under the general term of "barges," the libelant is entitled for 26 days to $32.50, with interest from March 12, 1897, for which a decree may be entered with costs.