### BRAISTED v. DENTON.

#### (District Court, E. D. New York. January 4, 1902.)

1. ADMIRALTY JURISDICTION—SUIT FOR WHARFAGE—DOMESTIC VESSELS.
   A suit to recover wharfage from the owner of a domestic vessel is maritime in its nature, and within the jurisdiction of a court of admiralty.

2. WHARVES—LIABILITY FOR WHARFAGE—ANCHORING IN PRIVATE SLIP.
   Vessels which enter and use a slip or basin belonging to a private person, and used for the purpose of storing vessels, cannot escape the payment of wharfage to the owner by disregarding the dock provided by him for mooring vessels therein, and either anchoring or tying to another dock that has no right to receive vessels floating in such basin, where the owner of the vessels has notice that wharfage will be charged.

3. SAME—VESSEL SUBJECT TO WHARFAGE—OYSTER FLOAT.
   A float used as a receptacle for oysters unloaded from other boats, which has the form of a boat and is navigable, is subject to a charge for wharfage.

4. SAME—RATES OF WHARFAGE—NEW YORK STATUTE.
   The penalty of double wharfage rates imposed by Laws N. Y. 1897, c. 378, § 859, on a vessel leaving a wharf or slip without paying the dues therein fixed, when the same are demanded, does not apply to vessels in the clam or oyster trade, which are separately provided for by section 860.

In Admiralty. Suit to recover wharfage.

Foley & Wray, for libelant.

Louis Ehrenberg, for respondent.

THOMAS, District Judge. This action is brought to recover for storing vessels in libelant's slip or basin. The libelant on July 6, 1893, became the owner in fee of certain land situate in the town of Flatlands, on Jamaica Bay, and more particularly described in the deed executed by Bernard J. York, as referee, to Garrett S. Braisted, and recorded in the register's office of the county of Kings, in Liber 2187 of conveyances, at page 46. Thereafter the libelant applied to the commissioners of the land office, and received from them a grant of land under water in front of and adjoining his upland, which is more particularly described in letters patent dated July 14, 1896, executed by the commissioners of the land office to Garrett S. Braisted, and recorded in Book of Patents No. 50, at page 64. On the land received from York the libelant constructed a dock, at which he was accustomed to receive vessels for mooring, and for which service he was entitled to compensation. A dock, owned by some other person and herein known as the "Pearsall Dock," was constructed, the westerly face of which bordered upon the land under water granted to the libelant, as above stated, but such dock was not entitled to the use or privileges of such water. The respondent at the times hereinafter mentioned stored certain vessels in the waters thus owned by the libelant, either by anchoring the same, or by making them fast to the Pearsall dock, thereby avoiding the use of the libelant's dock established as stated.

The use of the libelant's property for which wharfage is claimed is as follows: A vessel designated "old boat" from January 1 to January 20, and from January 20 to January 31, 1900, inclusive, period of 30 days, for which libelant claims compensation at the rate of 12½ cents per day, amounting in all to $3.75; a vessel designated "new boat," from January 1 to January 31, 1900, inclusive, 31 days, at 12½ cents per day, $3.87; a structure called a "float," from January 1 to January 31, 1900, inclusive, 31 days, at 25 cents per day, $7.75,—the entire claim amounting to $15.37. The boats were about 22 feet over all, and about 5 feet in width, the "new boat" being 1¾ tons, and the "old boat" 1½ tons. The float was 29 feet 7 inches long, 18 feet wide, and about 22 inches deep, and the tonnage was approximately eight tons. It was built with openings in the bottom to admit water, and sank only when filled with oysters from the other boats. The float was attached to the Pearsall dock by lines so as to give it sufficient opportunity to rise and fall with the tide, and lie on the bottom at low tide, and it was the custom of the other boats loaded with oysters to come in and lie on the outside of the float, when the oysters were culled and unloaded into the float, which having been done, at times the boats would lie off from the float on libelant's waters, cast anchor, and sometimes a line ran from the outlying boats to the float; at other times this stern line was omitted, and the boats were held alone by anchors. All the boats, including the float, were used

in the oyster trade. The cullings from the oysters were thrown into libelant's waters, and accumulated on the land underlying the same.

The libelant, previous to the times herein involved, fixed notices on the surrounding property, in such a manner as to come to the attention of the respondent, showing that full wharfage would be charged by the libelant for the services herein involved, and demand by the libelant for payment of wharfage was made in February, 1900.

It thus appears that while the libelant was endeavoring to secure patronage for his own wharf for mooring purposes, and for the use of the waters in front thereof, this respondent, during the times stated, anchored his small boats in such waters, or tied the same to the float, from which a line ran to the Pearsall dock. The obvious intention was to secure the use of such waters by the respondent without making compensation to the libelant, and, so far as the float was concerned, by making the same fast to a dock which had no rights in the water where such boats and float were. The respondent persisted in the use of the basin after due notice that compensation would be demanded, and should make compensation therefor, recoverable in this court, if jurisdiction thereof exists. It was decided by this court in Robinson v. The C. Vanderbilt, 86 Fed. 785, that wharfage furnished to a domestic vessel was maritime in its nature, and the authorities there marshaled may be consulted. Hence this court has jurisdiction in the present action in personam.

The question remains whether boats may enter a slip or basin belonging to a private person, used for the purpose of storing vessels, disregard the bulkhead or dock provided for mooring vessels, and either anchor in the basin, or tie to a dock that has no right to receive vessels floating in such basin, and all this in view of notice that charge would be made for such occupation. There should be no doubt of the right of the owner to recover for such service. The vessels were moored in the libelant's basin. A vessel may be moored in a slip without being made fast to the dock, which is a part thereof. It is an unreasonable assertion that a private basin or slip may be used for storing vessels, and compensation therefor escaped by the fact that the vessels were anchored rather than tied to the dock, or that the detaining line was carried across the water to the premises of a third person, where it was made fast, and this, too, in the face of notice that full charges would be demanded. In the present case the small boats were anchored a portion of the time, but at other times they were tied to the float, which in turn was made fast to the Pearsall dock. It is immaterial whether the vessels were tied to the libelant's dock, or anchored, or made fast to the float, or immediately to the Pearsall dock. It was all an occupation of the libelant's slip, and a mooring or docking of property therein.

May this court award compensation for storing the float? The float had the form of a boat. She rode upon the water and was navigable. There were apertures in the bottom that permitted her to fill when loaded, and she was used as a receptacle for the oysters from the smaller boats. Nevertheless she was a floating object, used for the reception of freight, and compensation should be rendered for the facilities furnished her, under the holding of Woodruff v. One Covered

Scow (D. C.) 30 Fed. 269. As has already been stated, the fact that she was made fast to the Pearsall dock does not permit her owner to escape payment for the use of the basin.

The final question relates to the compensation. The state of New York, by chapter 378, Laws 1897, as amended in 1898 and 1899, has fixed wharfage and dockage rates. Although section 859 is invoked by the libelant as illustrating the charges that may be made, section 860 relates to vessels in the clam or oyster trade, and provides:

"Vessels of two hundred tons burden and under, which shall be actually engaged in the clam or oyster trade, and which shall make fast to any pier, wharf or bulkhead within the city of New York, shall pay one and one-half cents per ton per day, and every such vessel which shall make fast to another vessel lying at any such pier, wharf or bulkhead, or to any vessel lying outside of such vessel, or that shall anchor within any slip or basin in said city, shall pay one cent per ton per day: provided, however, that no vessel shall pay less than twenty-five cents nor less than one day's wharfage, nor shall more than one day's wharfage be charged unless for a continuous use of the pier, wharf, bulkhead, slip or basin of more than twenty-four hours."

Section 859 provides:

"Every vessel that shall leave a pier, wharf, bulkhead, slip or basin, without first paying the wharfage or dockage due thereon, after being demanded of the owner, consignee or person in charge of the vessel, shall be liable to pay double the rates established by this section."

The provision for the penalty was not carried into section 860, and should not be interpolated by construction. This section plainly permits a minimum charge of 25 cents per day. But the court is not constrained to make the full allowance, nor does the libelant demand it. The sum charged by the libelant is reasonable, and should be allowed. Hence the account should be stated as follows:

For "old boat" for period of 30 days, at 12½c.................... $3 75
" "new boat" " " " 31 " " " ...................... 3 87
" "float" " " " 31 " " 25c....................... 7 75

$15 37

For this amount a decree will be entered for the libelant, with costs.