A. BIGELOW ADAMS *vs.* JOHN R. WHITE & SON, INC.

JULY 2, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Wharfage.*

Plaintiff and defendant were the owners of adjoining wharves, both estates being on the harbor line.  Owing to the limited width of defendant's wharf it was his invariable practice in unloading coal barges to overlap plaintiff's wharf, this being unavoidable.

*Held*, that plaintiff was entitled to wharfage.

*(2)  Wharfage.  Evidence.  Rent.*

In an action to recover compensation for the overlapping of plaintiff's wharf by defendant's vessels, the declaration containing counts for rent and for use and occupation, testimony to the effect that the property was rented to defendant and that defendant had paid a certain monthly sum therefor, was admissible.

*(3)  Wharfage.  Evidence.  Damages.*

In an action to recover compensation for the overlapping of plaintiff's wharf by defendant's vessels, the declaration containing counts for rent and use and occupation, evidence as to damage to plaintiff's building adjoining

the wharf was inadmissible, and where the court ruled that plaintiff could not recover such damage, the refusal to strike out the testimony regarding it did not constitute reversible error where it did not appear that such damage entered into the consideration of the jury.

(4)  *Wharfage.  Evidence.*

In an action to recover compensation for the overlapping of plaintiff's wharf by defendant's vessels, evidence as to how or in what manner plaintiff arrived at the amount he claimed per month, was admissible as aiding the jury in forming an opinion as to the reasonableness of the charge.

(5)  *Wharfage.  Evidence.*

In an action to recover compensation for the overlapping of plaintiff's wharf by defendant's vessels, testimony on the part of a real estate broker and appraiser as to the value of the overlapping privilege was admissible, where witness produced evidence upon the question of his competency, although he admitted that he had not made an examination of the leases pertaining to the properties in question.

ASSUMPSIT.  Heard on exceptions of defendant and overruled.

VINCENT, J.  This is an action in assumpsit originally brought in the district court of the sixth judicial district to recover the amount due for rent or compensation for the use and occupation, by the defendant, of a certain wharf belonging to the plaintiff.  A jury trial was claimed in the district court.  At the trial in the Superior Court the defendant introduced no testimony and the case was submitted to the jury upon the evidence offered by the plaintiff and the law as stated by the court.  The jury found a verdict for the plaintiff for $160, that being the amount claimed by the plaintiff for a period of eight months, at the rate of $20 per month.

The defendant filed a motion in the Superior Court for a new trial which was denied and the case is now before us on the defendant's bill of exceptions.

The plaintiff is the owner of a piece of wharf property, in the City of Providence, lying between South Water Street and the harbor line, which has been used as a landing place for passengers and freight and for the maintenance of a grain

elevator and warehouse, the latter having openings upon the water side for the reception of merchandise.

To the south of the plaintiff's property and separated from it by a narrow street is the leasehold estate upon which the defendant corporation maintains a coal pocket. Both estates are on the harbor line, that of the plaintiff measuring one hundred and eighty three feet and that of the defendant seventy-three feet thereon.

The barges or other vessels from which coal is discharged at the defendant's wharf vary in length from one hundred and fifteen to two hundred feet, so that all vessels while being discharged overlap the wharf of the plaintiff from a few feet to a hundred feet or more, depending upon the length of the vessel and the particular hatchway from which coal is being discharged. The plaintiff does not claim any ownership beyond the harbor line nor does he claim that there was any delay in unloading the vessels of the defendant, or that they were allowed to remain overlapping his wharf for any longer period than was necessary to complete their discharge. He claims however that the overlapping of the vessels while discharging at the defendant's wharf constituted a use of his property for which he is entitled to compensation. It cannot be disputed that a frequent or continuous overlapping of the defendant's vessels would be a limitation upon the plaintiff's use and enjoyment of his property and would be likely to deter others from seeking its advantages.

The defendant, however, contends that the Providence river is a public highway and that the occasional overlapping of the plaintiff's property, by vessels bringing coal to the defendant, is in no sense a use of the plaintiff's property, but amounts to nothing more than a necessary and lawful use of the said highway by the defendant in connection with the use and occupancy of its own river front and it is therefore not liable to compensate the plaintiff for such overlapping.

The defendant cites and seems to largely rely in support of its contention upon the case of "*The Davidson*," 122 Fed. 1006, which was decided in the district court for the District of

Rhode Island in 1903. In that case, which was a suit *in rem* for wharfage, the libel was based upon a single instance of overlapping at a time when the libelant had no applications for the use of his wharf and did not himself require its use. In the course of its opinion in that case the court said: "The impairment of the value of wharf property because of overlapping, and because of the inconvenience of making requests for the removal of overlapping vessels and of the delay in awaiting their removal, is a consideration which may be entirely fanciful or substantial, according to circumstances. Applied to some of our wharves, it would be highly imaginative; to others, it would be more or less substantial. It is, however, too uncertain a basis for the establishment of an arbitrary rule that the occupation of a berth in public waters, immediately in front of a private wharf, gives an invariable right to wharfage." The libellant in that case based his claim for wharfage upon the theory that he had a right of unobstructed access to his wharf at all hours of the day and that such right was in no way limited by or dependent upon the requirements of himself or others. Upon this point the court, in the case of "*The Davidson,*" further said: "If it is the fact that the overlapping of a vessel does not usually injure the wharf owner, or deprive him of any actual use of his wharf, then, there is no reason for a charge for wharfage, based upon a novel and impractical theory of a right to unobstructed access at all hours of the day." "*The Davidson*" case goes no farther than to hold that a single occurrence of overlapping, which in no way damages or deprives the other party of any actual or substantial right does not furnish a basis for the recovery of wharfage.

(1) In the case at bar it appears to have been the invariable practice of the defendant, in unloading its coal barges and other vessels, to overlap the plaintiff's wharf and that such overlapping was unavoidable owing to the limited width of defendant's own wharf. There is some testimony that at times, in order to provide for such overlapping, it became necessary to remove vessels lying at plaintiff's wharf. The

contention of the plaintiff that he is, under the circumstances of the present case, entitled to wharfage seems to be well supported by authority. Wharfage has been defined to be "a charge against a vessel for using or lying at a wharf or landing—a rent charged by the owner of the property for its temporary use." *Quachita & Mississippi River Packet Co.* v. *Aiken*, 16 Fed. 890. It has also been held in the case of *Braisted* v. *Denton*, 115 Fed. 428, to be "immaterial whether the vessels were tied to the libelant's dock or anchored, or made fast to the float, or immediately to ,the Pearsall (a dock owned by another party). It was all an occupation of the libelant's slip and a mooring or docking of property therein."

In *Ranstead* v. *The William H. Brinsfield*, 39 Fed. 215, it was held that "in the absence of any statutory regulation of wharfage, that by lying alongside libelant's wharf for the distance of 20 feet the vessel enjoyed a beneficial use of it, although not made fast to it, and not using it to land cargo; and that for such use the libelant was entitled to compensation and a maritime lien."

In the case of *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, it was held that if another person wishes to make use of a private wharf, that is a wharf which the owner has constructed and reserves for his own private use, the parties are at liberty to make their own bargain. "That such wharves may be had and owned in a navigable river, is not open to controversy."

In the case of *DeBary Baya Merchants' Line* v. *Jackson-. ville, T. & K. W. Ry. Co.*, 40 Fed. 392, the court said: "There is no principle that interposes any hindrance to the recovery from any vessel landing at a wharf owned by an individual or by a municipal or other corporation a just compensation for the use of such property. It is a doctrine too well settled, and a practice too common and too essential to the interests of commerce and navigation to admit of a doubt, that for the use of such structures, erected by individual enterprise, and recognized everywhere as property, a reasonable compensation can be exacted."

In *Ex Parte Easton*, 95 U. S. 68, the court said: "Compensation for wharfage may be claimed upon an express or an implied contract, according to the circumstances. Where a price is agreed upon for the use of the wharf, the contract furnished the measure of compensation; and when the wharf is used without any such agreement, the contract is implied, and the proprietor is entitled to recover what is just and reasonable for the use of his property and the benefit conferred.

"Such erections are indispensably necessary for the safety and convenience of commerce and navigation, and those who take berth alongside them to secure those objects, derive great benefit from their use. All experience supports that proposition, and shows to a demonstration that the contract of the wharfinger appertains to the pursuit of commerce and navigation."

The defendant's bill of exceptions sets forth 41 exceptions, 39 of which relate to the admission and rejection of testimony. Exception numbered 40 is to the denial of the defendant's motion for a direction of a verdict and exception 41 covers four alleged errors of the trial court in its charge to the jury.

There is also noted in the bill of exceptions an exception to the denial of the defendant's motion for a new trial, although such exception is not numbered with the other exceptions.

(2) The exceptions from 1 to 8, inclusive, relate to the admission of testimony as to the rental of the property and the payment of rent therefor on the part of the defendant. There was some testimony, and such testimony was undisputed, that for a considerable period the defendant had paid to the plaintiff or his predecessors in title the monthly sum of $12.50 on account of the overlapping of vessels while discharging cargoes at the defendant's wharf. It is argued on the part of the defendant that such payment should not be considered as rent, but as a gratuity which was designed to offset any inconvenience which the plaintiff or his predecessors in title might suffer from the exercise of defendant's

rights; that such payment was not made in satisfaction of any legal obligation on the part of the defendant, but was a voluntary act.

It was the purpose of the plaintiff's suit to recover a certain monthly sum as rent or as compensation for the overlapping privilege which the defendant had enjoyed.   The plaintiff's writ contained a special count for rent and also a common count for use and occupation.

The defendant refers in its brief to the payment of $12.50 per month by the defendant to plaintiff as a gratuity which was paid to the plaintiff as a matter of comity and states that when the plaintiff claimed a larger amount the defendant asserted that the plaintiff had no right to make any such claim or to make any claim whatever against the defendant, although the defendant was willing to continue payments at the rate which had previously prevailed.

The plaintiff having a count for rent and a count for use and occupation, it was competent for him to offer testimony in support of either count and he might recover under either should the testimony be found to warrant such a recovery.

We do not see that it was error in the trial court to admit testimony to the effect that the property was rented by the plaintiff to the defendant and that the defendant had paid a certain monthly sum therefor.

The exceptions 9, 10, 11 and 12 were to the admission of testimony showing that the barges lying at the defendant's wharf overlapped the wharf of the plaintiff.   We think that the same observations which we have already made regarding the prior exceptions are equally applicable to their consideration.

The exceptions 13, 14, 15, 16 and 17 were to the admission of testimony as to the manner in which the defendant made use of the plaintiff's wharf and we do not find any error in the introduction of that testimony.

The exceptions 18 and 19 were to the introduction of testimony regarding damages to the building of the plaintiff, which seems to have been situated within a very few inches

of the line of the wharf, such damages arising presumably from the contact of vessels.   For such damages no recovery could be had in the plaintiff's suit and we do not see why such testimony should have been admitted.   The court however stated, probably in the presence of the jury, that the plaintiff was not entitled to recover damages to his building but, notwithstanding, overruled the defendant's motion to strike out the testimony regarding such damages. An examination of the charge of the court does not contain any reference to the matter of damages to the building. The attention of the jury was directed by the court to the plaintiff's claim for rent or use and occupation of the wharf. The trial court does not appear to have been requested by either party to allude to the matter of damages to the building in its charge to the jury and so far as anything appears it became lost to view after the court had stated that no such damages could be recovered.   There is nothing to indicate that any such damage entered into the consideration of the jury.   We do not think that these exceptions are of importance.

Exceptions 22 and 23 refer to the admission of testimony as to the leasing of the wharf or some privilege therein by the Providence, Fall River and Newport Steamboat Company. This testimony would seem to have some bearing as to whether the use and occupation of the wharf by the defendant deprived the plaintiff of some substantial use and enjoyment thereof and we cannot see that its admission was error.

Exception 33 relates to the admission of testimony as to how or in what manner the plaintiff arrived at the amount of $20 per month which he claimed the defendant should pay for rent or for the use and occupation of his wharf.   This testimony might aid the jury in forming an opinion as to the reasonableness of the charge or the reasonableness of compensation which the plaintiff claimed for use and occupation. We do not think that in any view of it it is of sufficient weight to constitute reversible error.

The exceptions 36, 37 and 38 relate to the admission of (5) testimony on the part of a real estate broker and appraiser as to the value of the overlapping privilege. The witness, upon the question of his competency, testified that he had been for a considerable period employed as an appraiser by the Industrial Trust Company, the Narragansett Electric Lighting Company, and the N. Y., N. H. & H. R. R. Co., and others. While he admitted that he had not made an examination of the leases pertaining to the properties in question, he testified that $20 per month was a very low rental for the privileges in question. We do not think its admission was error.

The exception 40 is to the denial of the defendant's motion to direct a verdict, which together with the unnumbered exception to the denial of the defendant's motion for a new trial, is substantially covered in the treatment of the other exceptions and need not be specifically discussed.

The exception 41 sets forth the error of the judge in three specific portions of his charge and does not upon careful examination seem to us to suggest any substantial error or to require extended discussion. The other exceptions to which we have not referred are not relied upon, as we are advised by the defendant's brief, and they have not therefore been considered.

According to the testimony the defendant, for a period of ten years and upwards, has paid to the plaintiff the sum of $12.50 per month as compensation for the overlapping of its vessels upon the plaintiff's wharf, and it was not until the plaintiff raised the price per month to $20 that the defendant denied its liability to pay for the privilege of overlapping, at the same time tendering and offering the plaintiff compensation at the former rate. We do not think that the defendant after a long continued course of dealing through which it has recognized by substantial payments the right of the plaintiff to compensation for the use of his property is now justified, either in reason or upon authority, in repudiating such right.

The amount which the plaintiff is entitled to receive has been found by the jury, after hearing the testimony of the witnesses bearing upon that question, and we see no reason for disturbing or disagreeing with such finding.

The defendant's exceptions are all overruled and the case is remitted to the Superior Court with direction to enter judgment for the plaintiff on the verdict.

*Frank Healy, George T. Marsh*, for plaintiff.
*Henry W. Hayes*, for defendant.

