BEARD et al. v. MARINE LIGHTERAGE CORPORATION et al. SAME v. MORAN TOWING & TRANSPORTATION CO. et al. SAME v. FLOWER LIGHTERAGE CO.

(District Court, E. D. New York. January 31, 1924.)

1. Wharves ⬅️18—Claim for wharfage entitled to maritime lien.

A claim for wharfage is enforceable in admiralty and is entitled to a maritime lien, whether the wharf be privately or publicly owned.

2. Wharves ⬅️18—Lien for wharfage is given by law of New York and is enforceable in admiralty.

By the law of New York a lien is given on a ship to which wharfage is furnished, and such lien is enforceable in admiralty.

3. Wharves ⬅️18—Lien for "wharfage" attaches to ship laid up for protection in home port if not out of commission.

"Wharfage" not only includes mooring of vessels for loading and unloading cargo, but also for the purposes of protection and safety, and a maritime lien therefor attaches to the ship in her home port if she is not out of commission or withdrawn from navigation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Wharfage.]

4. Wharves ⬅️17, 18—Charter provision fixing wharfage charges applies to private wharves in absence of contract.

Greater New York Charter, § 859, prior to amendment in 1923 (Laws 1923, c. 477, § 1), fixing wharfage charges and providing that they should be a lien, applies to private wharves as to the lien and also as to the charges, in the absence of contract.

5. Wharves ⬅️17—Use of wharf after notice of scale of charges constitutes contract at such rate.

A shipowner who uses a wharf after notice of the scale of charges therefor is liable in accordance with such scale.

6. Customs and usages ⬅️18—Must be pleaded.

A custom or usage relied on to give a cause of action must be pleaded.

7. Wharves ⬅️18—Statutory double wharfage not a penalty, but a rate enforceable as lien.

Under a statute providing that, where wharfage is not paid before the vessel leaves the wharf after demand, the rates shall be double, such double wharfage is not a penalty, but an alternative rate enforceable as a maritime lien.

8. Wharves ⬅️16—Lease of pier held not to deprive lessor of right to collect wharfage from other vessels.

The lease of a pier to a steamship company *held* not to deprive the owner of the right to collect wharfage for the use of the slip by other vessels for lighterage purposes.

9. Shipping ⬅️148—Delivery of goods on pier held under bills of lading to have ended responsibility of steamship carrier.

A steamship company which as carrier performed its whole duty to the shipper, under the bill of lading, by delivering the goods on a pier or to a lighter, *held* under no obligation to furnish free wharfage to the consignee for lightering the goods from the pier or vessel.

10. Wharves ⬅️16—Owner of warehouse held entitled to wharfage for use of a pier in removing goods stored in its warehouse.

The owner of a warehouse. in which a consignment of wool was stored, and also of a pier adjoining, for the use of which it charged wharfage, *held* under no obligation to furnish free wharfage at its pier to a lighter employed by the owner of the wool, by contract, to receive and remove it.

In Admiralty. Suits by William Beard and J. Robinson Beard, trustees against the Marine Lighterage Corporation, and lighter M. L. C.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No. 36, with the Lloyd Royal Belge Société Anonyme, impleaded, against Moran Towing and Transportation Company and the dock scow M. T. & T. Co. No. 76. with the Williams Steamship Company, impleaded, and against the Flower Lighterage Company. Decree for libelants in each case against original respondents. Petitions against impleaded respondents dismissed.

Mengel & Conroy, of New York City, for libelants.

Macklin, Brown & Van Wyck, of New York City, for lighterage companies, claimants and respondent.

H. Robert Burney, of New York City, for respondent Williams Steamship Co.

Loomis & Ruebush, of New York City, for respondent Lloyd Royal Belge Société Anonyme.

Montague Lessler, of New York City, for American Dock Co. and the Pouch Terminal.

Davies, Auerbach & Cornell, of New York City, for New York Dock Co.

CAMPBELL, District Judge. These are three suits in admiralty all relating to various phases of wharfage which the libelants in each suit are seeking to recover, their right so to do being denied in each suit.

The motion of the impleaded respondent, Lloyd Royal Belge Société Anonyme, for leave to amend its answers to conform to the proof that the cargo in question was not bound to ports on the Central Vermont Railroad, is granted.

[1] The right to collect wharfage is a right which has been recognized in admiralty from the earliest times, and it has been repeatedly held that the wharfinger has a maritime lien therefor, and no distinction has been made whether the wharf be privately or publicly owned. The Bold Buccleugh, 7 Moore, P. C. 269; The Kate Tremaine, Fed. Cas. No. 7,622, 5 Ben. 60.

[2] By the law of this state a lien is given upon the ship to which wharfage is furnished, and this court has power to enforce that lien. The Belfast, 7 Wall. (74 U. S.) 633, 19 L. Ed. 266; Ex parte McNiel, 13 Wall. (80 U. S.) 243, 20 L. Ed. 624.

[3] "Wharfage" not only includes mooring of vessels for unloading and loading cargo, but also for the purposes of protection and safety, and a maritime lien attaches to the ship in a home port if she is not out of commission or withdrawn from navigation. The George E. Berry (D. C.) 25 Fed. 780, The Allianca (D. C.) 56 Fed. 609; The C. Vanderbilt (D. C.) 86 Fed. 785.

The question of a lien for wharfage in a domestic port was not before the court in Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373. but its reasoning seems to me to apply with equal force to vessels in domestic as well as foreign ports, and in that case the court at page 74 of 95 U. S. (24 L. Ed. 373), says:

"Neither canal boats nor barges ordinarily have sails or steam power, but they usually have tow lines; and it clearly cannot make any difference, as to their liability for wharfage, whether they are propelled by steam or sails of their own, or by tugs, or horse or mule power, if it appears that the boat or barge actually occupied a berth at the wharf or slip at the commencement

or close of the trip as a resting place, or for the purpose of loading or unloading cargo, or receiving or for landing passengers."

And at page 76 of 95 U. S. (24 L. Ed. 373):

"From an early period, wharf owners have been allowed to exact from ships and vessels using a berth at their wharves a reasonable compensation for the use of the same."

And at page 77 of 95 U. S. (24 L. Ed. 373):

"The ship herself may be proceeded against * * * when the vessel lies alongside the wharf, or at a distance, and only uses the wharf temporarily for boats or cargo."

In The Kate Tremaine, supra, the court at page 62 of 5 Ben. (Fed. Cas. No. 7,622) said:

"The money paid for the aid to the vessel in her business, which she derives from the use of the wharf, is not rent, but wharfage. * * * It may become due, although no cargo be discharged from the vessel upon the wharf, or taken from the wharf on board the vessel. It may be chargeable for a vessel not attached to the wharf at all, but only to other vessels which are so attached."

In Scow No. 15 (D. C.) 88 Fed. 305, affirmed 92 Fed. 1008, 35 C. C. A. 149, the court said, in speaking of the decisions in Ex parte Easton, 95 U. S. 68 (24 L. Ed. 373), and The Lottawanna, 21 Wall. (88 U. S.) 558, 22 L. Ed. 654:

"There is no force in the suggestion that there is no general maritime lien against a domestic vessel for wharfage. The converse is held, upon sound reasoning."

[4] A law fixing rates for wharfage, which were doubled if not paid within 24 hours after demand and making the same a lien on the vessel, was enacted in 1860, being chapter 254 of that year.

This law was amended by chapter 707 of the Laws of 1870, and that in turn was amended by chapter 320 of the Laws of 1872.

The next amendment was chapter 378 of the Laws of 1897, by which it became section 859 of the New York Charter. In all of these laws the double rates were retained if payment of the primary rate was not made upon or within a specified time after demand, and in all of them it was provided that the wharfinger should have a lien therefor upon the vessel.

This law continued in force until the amendment of the New York Charter in 1901, when, by chapter 466, said section 859 was re-enacted to read as follows:

"It shall be lawful to charge and receive, within the city of New York, wharfage and dockage at the following rates, namely: From every vessel that uses or makes fast to any pier, wharf, or bulkhead, within said city or makes fast to any vessel lying at such pier, wharf, or bulkhead, or to any other vessel lying outside of such vessel, for every day or part of a day except as hereinafter provided, as follows: From every vessel of two hundred tons burden and under, two cents per ton; and for every vessel over two hundred tons burden, two cents per ton for each of the first two hundred tons burden, and one-half of one cent per ton for every additional ton, except that, save as hereinafter provided, vessels known as North river barges, market boats and barges, sloops employed upon the rivers and waters of this state, and schooners exclusively employed upon the rivers and waters of

this state shall pay for every such vessel under the burden of fifty tons, at the rate of fifty cents per day; for every such vessel of the burden of fifty tons, and under the burden of one hundred tons, at the rate of sixty-two and a half cents per day; for every such vessel of the burden of one hundred tons, and under the burden of one hundred and fifty tons, at the rate of seventy-five cents per day; for every such vessel of the burden of one hundred and fifty tons, and under the burden of two hundred tons, at the rate of eighty seven and a half cents per day; and for every such vessel of the burden of two hundred tons, and under the burden of two hundred and fifty tons, at the rate of one hundred cents per day; for every such vessel of the burden of two hundred and fifty tons, and under the burden of three hundred tons, at the rate of one hundred and twelve and a half cents per day; for every such vessel of the burden of three hundred tons, and under the burden of three hundred and fifty tons, at the rate of one hundred and twenty-five cents per day; for every such vessel of the burden of three hundred and fifty tons, and under the burden of four hundred tons, at the rate of one hundred and thirty-seven and a half cents per day; for every such vessel of the burden of four hundred tons and under the burden of four hundred and fifty tons at the rate of one hundred and fifty cents per day; for every such vessel of the burden of four hundred and fifty tons, and under the burden of five hundred tons, at the rate of one hundred and sixty-two and a half cents per day; for every such vessel of the burden of five hundred tons, and under the burden of five hundred and fifty tons, at the rate of one hundred and seventy-five cents per day; for every such vessel of the burden of five hundred and fifty tons, and under the burden of six hundred tons, at the rate of one hundred and eighty-seven and one-half cents per day; for every such vessel of the burden of six hundred tons and upwards, to pay twelve and a half cents, in addition for every fifty tons in addition to the rate last mentioned, for every day such ship or vessel shall use or be made fast to any of said wharves; but no boat or vessel over fifty tons burden shall pay less than fifty cents for a day or a part of a day, and the class of sailing vessels now known as lighters shall be at one-half the first above rates. Every other vessel making fast to a vessel at any pier, wharf, or bulkhead within said city, or to another vessel outside of such vessel, or at an anchor within any slip or basin, when not receiving or discharging cargo or ballast, one-half of the first above rates; and from every vessel or floating structure, other than those above named, or used for transportation of freight or passengers, double the first above rates, except that floating grain elevators shall pay one-half the first above rates; and every vessel that shall leave a pier, wharf, bulkhead, slip or basin, without first paying the wharfage or dockage due thereon, after being demanded of the owner, consignee, or person in charge of the vessel, shall be liable to pay double the rates established by this section."

No material change seems to have been made in that section until last year when, by chapter 477, which became a law May 21, 1923, said section 859 of the New York Charter was amended to read as follows:

"It shall be lawful to charge and receive, within the city of New York, wharfage and dockage from every vessel or floating structure that uses or makes fast to any pier, wharf, or bulkhead, within said city or makes fast to any vessel lying at such pier, wharf, or bulkhead, or to any other vessel lying outside of such vessel, for every day or part of a day, at rates to be fixed by the commissioners of the sinking fund after public hearing on recommendation of the commissioner of the department of docks."

The advocate for claimants in the first two suits and respondent in the last suit claims that the charter provision has no application to the libelants in the instant suits as they are the owners of private and not public wharves; but I am unable to agree with that proposition.

The wharves in question are undoubtedly private wharves (Louisville, etc., R. R. Co. v. West Coast Co., 198 U. S. 483, 25 Sup. Ct. 745,

49 L. Ed. 1135), and the Legislature could not prevent the libelants from making an express contract for wharfage at any rate that might be fixed by the contract; but the Legislature had a perfect right to provide in what cases a lien should arise for wharfage and to fix a sum which would be chargeable in the absence of an express contract, and this is what was done by section 859 of the City Charter, supra, previous to its amendment by chapter 477 of the Laws of 1923, supra. The Antonio Zambrana (D. C.) 88 Fed. 546; The Allan Wilde (D. C.) 255 Fed. 171, affirmed (C. C. A.) 264 Fed. 291.

In The Allan Wilde (C. C. A.) 264 Fed. 291, at page 295, after discussing the effect of section 859 of the Charter, the court said:

"This understanding of the statute seems to have been acquiesced in by all owners of vessels in port, and to us is strong evidence of its proper interpretation."

[5] If, however, there should be any question about this, there can be no force in the claimant's contention that recovery could be had only against claimants as trespassers, because each of them, before the wharfage services were rendered, had received notice of the scale of charges which the libelants were making (which were not in excess of the statutory rates), and the acceptance of the services by the claimant with that knowledge fixed its liability to pay therefor according to that scale.

[6] Much has been said about usage and custom by all the parties, but I agree with the advocate for claimants and respondent that the libelants could not sustain their right to recover wharfage by reason of custom or usage, because they had not pleaded that there existed any custom or usage, and the same should have been pleaded if they desired to offer proof thereof (12 Cyc. 1097; Phoenix Iron & Steel Co. v. Wilkoff Co., 253 Fed. 165, 165 C. C. A. 65, 1 A. L. R. 1497), but no such proof was required as to the existence of custom or usage, because the statutes of the state and the decisions of the courts all show that there existed a right to recover for wharfage of every vessel or floating structure that uses or makes fast to any pier, wharf, or bulkhead, or where one boat made fast on the outside to another which was made fast to the pier.

The libelants did, however, plead in the libel in the case of the Peerless, arising before the amendment of section 859 of the Charter in 1923, in stating the charge per day:

"Which sum is reasonable and proper and in accordance with the statutes and laws of the state of New York and the customary charge prevailing therefor at the time the said wharfage and services were furnished as aforesaid."

The sum fixed by statute was a reasonable charge, but it was not the customary charge at that wharf at that time, as was shown by the fact that the respondent as well as other lightermen had been notified in writing, long before the time such wharfage was furnished, in effect that the charges then prevailing before January 1, 1923, would be exacted, and to that extent and to that end the proof of custom which was pleaded was received.

The libelants in the two cases that arose after the said charter amendment in 1923 pleaded in their libels, in stating the charge per day:

"Which sum is reasonable and proper and the customary charge prevailing therefor at the time said wharfage services were furnished as aforesaid."

Since the passage of the Act of May 21, 1923, it appears that no scale of charges had been fixed by the proper authority as provided by that act, and therefore any one who received wharfage services without any notice as to the charge that would be made could only be held for the fair and reasonable value of such services; but this cannot be true as to one who accepted such services after notice of the charges which the libelants intended to make, which were not in excess of the rates fixed by the former statute, because the rate fixed by statute was a reasonable rate, and I cannot believe it became unreasonable until a different rate was fixed by the proper authority, which had not been done at that time, and the proof is overwhelming that it was the custom to make charges at those wharves at that time at the rates prevailing before January 1, 1923, and that notice had been given to the claimants as well as other lightermen that such charges would be exacted long before the time such wharfage was furnished; and to that extent and to that end the proof of custom was received as pleaded, and this would be true even if the claimants were the agents of the owners of the cargo, because notice to the agent would bind the owner.

[7] Claimants contend that a double charge in cases where prompt payment is not made is a penalty, and that there can be no recovery in admiralty for a penalty imposed by a state statute.

This does not seem to be in accord with the decisions of the courts, which have held that where the statutory rate is demanded and refused, double wharfage then becomes a maritime demand and lien but not a penalty. The Allianca, 56 Fed. at page 613; The Ann Ryan, Fed. Cas. No. 428, 7 Ben. 20; The Virginia Rulon, Fed. Cas. No. 16,974, 13 Blatch. 519.

In some of the instant suits the vessels came to the wharves after the passage of the Act of May 21, 1923, under which no scale of charges had been fixed; but even in these cases, the services having been accepted after notice of the charges that would be exacted, and if a difference was made in the case of those for which payment was made in cash and those for which credit was given, it seems to me that the services were rendered and received with full knowledge that the rates which I have held to be reasonable and the customary rates at those wharves were to be paid for the wharfage, and that the double charge if made was not a penalty, but an alternative rate where credit was given, and as such recoverable in this court.

I can see no merit in the contention of the claimants and respondent that because of the libelants had charged lower rates before January 1, 1923, they could not raise those rates after that time; but from the notices in evidence I cannot find that they did.

The wharves in question are private wharves, and the libelants gave ample notice of the charges they would make; therefore, claimants and respondent, who voluntarily sought wharfage after such notice, have

no right now to refuse to pay the rates which were customarily charged and that they were notified would be exacted.

The first case is that of The M. L. C. No. 36.

In this case the lighter M. L. C. No. 36, on May 23, 1923, tied up to Pier 2, Erie Basin, for the purpose of receiving a consignment of flax and wheat which had been discharged from the steamship Carlier, of the Lloyd Royal Belge Société Anonyme; the steamship Carlier having left the pier prior to the arrival of the lighter M. L. C. No. 36 at said pier. Demand for wharfage was made prior to the lighter leaving such pier and payment thereof refused.

On June 16, 1923, the said lighter M. L. C. No. 36 proceeded to Section 10, Erie Basin Breakwater, for the purpose of receiving cargo which had been discharged from a ship of the Ybarra Line, and remained until June 19, 1923. Demand for wharfage was made prior to the lighter leaving such pier and payment thereof refused.

[3] Pier 2 had been leased by the libelants to Lloyd Royal Belge Société Anonyme, and Section 10, Erie Basin Breakwater, had been leased by the libelants to the Ybarra Line, together with the use of a certain described portion of the slip, and which leases contained the following clause:

"Excepting and reserving to the said lessor the right to charge, collect, and receive, for their own use, in addition to the aforesaid rent, wharfage, at statutory or customary rates, on all vessels or boats engaged in the lightering of freight or merchandise, or employed in lading or discharging other vessels, that shall use or make fast to said pier, the wharf or bulkhead adjoining the same, or that shall make fast to any vessel lying at such pier, wharf or bulkhead, or to any vessel lying outside of such vessel."

Claimants contend that libelants cannot recover because they seek recovery on the alleged ground that they are the owners and in possession of the said pier and breakwater, whereas they are not in possession thereof because the same are in the possession of said companies, having been demised to them by said leases.

If this was the whole allegation, there might be much force to that contention. The allegation, however, also is that the libelants are the owners and in possession of the slips and inclosed waters and bulkheads adjacent thereto or connected therewith, and this allegation is unquestionably true because all that the libelants gave the lessees as to said water was the use of a portion of the same, and reserved to themselves the right to collect from others for the use of said waters; and while the charge made herein is for wharfage by a boat making fast to said pier or breakwater, still the fact remains that the lighter did not occupy any of the pier or breakwater leased to the said companies, but only a portion of the slip possession of which was reserved by the libelants subject only to the use of the same by the lessee; and libelants also reserved and excepted from the said lease the right to collect wharfage under these conditions.

That the lessors did retain possession of the said slips, with the right to allow vessels to occupy the same subject to the use of the said lessees, is further shown by the mutual covenant between the lessors and lessees, that they will not obstruct the same so as to hinder ingress or

egress, and further by the lessors' covenant to maintain certain depths of water in said slips.

The allegation of possession of the pier or breakwater is mere surplusage and may be disregarded, and the allegations of the libel held sufficient, because libelants would be entitled to recover if the vessel had occupied water the land under which was possessed by the libelants, and in so doing the vessel had tied up to a pier the owner of which had no rights in and to the water and land under water where said vessel lay. Braisted v. Denton (D. C.) 115 Fed. 428.

The claimant Marine Lighterage Corporation by petition under the fifty-sixth rule in admiralty impleaded the Lloyd Royal Belge Société Anonyme, alleging that said impleaded respondent was the owner of the steamship Carlier, and that the lighter of the claimant arrived alongside of said pier and remained there for the time alleged for the purpose of receiving cargo on board which had arrived on the steamship Carlier.

[9] The claimant contends that it was the agent of the consignee of such cargo, but only alleged in said petition that it was engaged by the consignee to receive and lighter it, and that it was the duty of the said owner of said steamship to furnish these wharfage facilities to claimant, and that if libelants have any right to collect such wharfage, the recovery can be only against the owner of said steamship and not against the claimant.

The impleaded respondent answered denying the claims of the claimant and alleged that the said cargo was accepted and carried by the respondent impleaded pursuant to the terms and provisions of a contract of carriage or bill of lading containing the following provision (paragraphs 3 and 8):

"Also. * * * It is expressly stipulated that the goods and merchandise mentioned in this bill of lading whilst being transshipped or awaiting shipment on any quay or lighter in Antwerp or elsewheresoever, and also soon as they are discharged over the ship's side, shall be at the sole risk of the shipper or consignee. Goods which may require to be forwarded by rail, steamship, lighter, or otherwise to their port of shipment or to their destination from the ship's port of discharge shall be forwarded at merchant's risk subject to the ordinary conditions of carriage of such railway, steamship or other carrier, or subject to any special terms required by them. Where the merchandise for any reason is not or cannot be removed from alongside of the ship, or if not delivered from the ship to dock, warehouse, or lighter, and in all cases not covered by paragraph numbered 3 of this bill of lading a written notice of the shipper's claim must be delivered to the carrier within eight days following the discharge of the steamer, otherwise the claim shall be conclusively deemed waived. * * * "

"8. The goods to be taken from alongside by the consignee immediately the vessel is ready to discharge, without reference to the state of the weather or otherwise they will be landed and deposited at the expense of the consignee and at his risk of fire, loss or injury as aforesaid, on the dock or wharf, or into hulk or lighters, or in the warehouse provided for that purpose, or sent to the public store, as the collector at the port of New York shall direct and when deposited in the warehouse, to be subject to storage, the collector of the port being hereby authorized to grant a general order for discharge immediately after arrival of the ship."

And that the respondent impleaded had completely performed its duty by delivering and depositing said cargo on said pier or wharf.

The right to collect wharfage from every vessel or floating structure that uses or makes fast to any pier, wharf, or bulkhead has been recognized in admiralty from ancient times and by the law of this state for over 100 years, and I do not know of any authority to the contrary.

The claimant, however, presents a new question by its contention that the libelants cannot recover against it in this case because the impleaded respondent, the lessee of said pier, is under an obligation as a common carrier to furnish this facility to its consignees, of whom the claimant is the agent, and that if the libelants have any right to collect for such wharfage, they must collect from the impleaded respondent.

Claimant further contends that the impleaded respondent could not as the lessee of said pier recover for such wharfage, and therefore it cannot do it indirectly by allowing the libelants to reserve and except such right in the lease of said pier in consideration of a reduction in the rent reserved.

I am unable to find that there existed any contractual relation between the claimant and the impleaded respondent, and it is worthy of note that claimant made no allegation that in removing the cargo it was the agent of the consignee, nor was it such agent for any purpose other than to receipt for the cargo which it was to receive, but was on the contrary an independent contractor, performing a service for the consignee for which the consignee was to pay an agreed price.

Therefore I cannot see that the impleaded respondent was under any obligation to the claimant, but if I am in error on this point, then in no event could the impleaded respondent owe the claimant any greater duty than it owed the consignee, and that duty is fixed and determined by the third and eighth paragraphs of the bill of lading, hereinbefore set forth.

The impleaded respondent performed its full duty under said bill of lading when it deposited the cargo over the ship's side on the pier.

The claimant argues at length about the duty of a common carrier to furnish terminal facilities for the delivery of the goods transported by it, but I have yet to find any authority which holds that such duty is not performed if a free opportunity is offered in one way for such delivery. The proof shows that such opportunity was offered in the instant case because no charge of any kind was made for entering on said pier and removing goods therefrom to the land by vehicles.

Claimant contends that this is not sufficient, but that the impleaded respondent was also obliged to give it free of charge the opportunity to remove such goods by water.

No such obligation can be found from the terms of the bill of lading, and claimant has neither alleged nor proven that any such obligation can be implied on the ground of established usage or custom.

With claimant's contention I cannot agree, because with the changing conditions it could as well be contended that it was the duty of the impleaded respondent to furnish an opportunity to remove said goods by railroad or airship.

The second case is that of The M. T. & T. Co. No. 76.

In this case the lighter M. T. & T. Co. No. 76, on the 16th day of June, 1923, proceeded to tie up and made fast to the steamship Will-

hilo, operated by the Williams Line, which was made fast to Pier 1, Erie Basin, and remained so tied up and made fast until the 18th day of June, 1923, while certain lumber was being discharged from such steamer into the said lighter M. T. & T. Co. No. 76. Wharfage was demanded from said lighter before she left her berth aforesaid, and payment thereof was refused.

Pier 1 had been leased by the libelants to Williams Steamship Company, Incorporated, together with the use of a certain described portion of the slip, which lease contained the same reservation and exception as was contained in the lease of Pier 2, hereinbefore referred to in the case of the M. L. C. No. 36.

The claimant raises the same contention as to libelants' right to recover under the allegations of ownership and possession contained in the libel, but it hardly seems necessary to repeat the reasoning on which I sustained the sufficiency of the allegations of the libel in that case, as the same reasons apply in this case.

The claimant in this case, the Moran Towing & Transportation Company, by petition under the fifty-sixth rule in admiralty, impleaded the Williams Steamship Company, Incorporated, alleging that said impleaded respondent was the owner of the steamship Willhilo, and that the lighter of the claimant arrived alongside of said steamship on June 16, 1923, and was made fast to said steamship and remained there for the time alleged for the purpose of receiving said cargo of lumber.

The claimant contends that it was the agent of the consignee of such cargo, but only alleged in said petition that it was engaged by the consignee to receive and lighter it, that it was the duty of the said owner of said steamship to furnish these wharfage facilities to claimant, and that if libelants have any right to collect such wharfage, the recovery can be only against the owner of said steamship and not against claimant.

The impleaded respondent answered denying the claims of the claimant and alleged the lease from libelants to it.

Claimant makes the same claims as were made by the claimant in the M. L. C. No. 36, and my findings are the same as in that case, that there was no contractual relation between claimant and the impleaded respondent, that the claimant was not the agent of the consignee for any purpose other than to receipt for the cargo when it was received, and that the impleaded respondent was under no obligation to the claimant. But if I am in error in this, then certainly the impleaded respondent was under no greater obligation to the claimant than it was to the consignee, and that obligation was set forth in paragraph 3 of the bill of lading, which reads as follows:

"If destination is a seaport, the ship may commence discharging immediately upon arrival and discharge continuously, the collector of the port being hereby authorized to grant a general order for discharge immediately on arrival. Goods to be delivered at ship's tackles and/or deck and all charges from thence, including quay expenses, weighing, and delivering to be borne by consignee or owners. If the goods be not taken by the consignee within such time as is provided by the regulations of the port of discharge, they may be sent to store, permitted to lie where landed, or returned to the port of shipment, at the expense and risk of the owner, shipper or consignee.

"The said Williams Steamship Company, Inc., is hereby expressly granted the right and option of delivering the merchandise represented by this bill of lading to consignee from alongside, or of landing and/or storing said merchandise either in lighters, hulks or wharf, or in warehouse immediately upon the arrival of said steamer at the port of discharge of said merchandise, without notice to and at the expense of consignee; and in the event of its so landing and/or storing said merchandise, said company is thereupon hereby released from all further liability for loss and/or damage thereafter, whether arising from fire or any other cause.

"If no address of a person at the ultimate point of delivery, immediately entitled to such delivery be disclosed by this bill of lading, the same must be furnished by the shipper, owner or consignee, in writing, to the delivering carrier before the time at which in ordinary course of transportation the goods should arrive at such point. A failure to do this shall in case of any subsequent loss of or injury to the latter, be treated as conclusive proof of negligence on the part of the shipper, owner or consignee, which contributed to such loss or injury."

The impleaded respondent would have performed and fulfilled its full duty under said bill of lading by depositing this cargo over the ship's side on the pier.

The claimant makes the same argument in the instant case, about what it claims is the duty of a common carrier to furnish terminal facilities for the delivery of goods transported, as was made in the case of the M. L. C. No. 36, but no authority has been presented to me which holds that such duty is not performed if a free opportunity is offered in one way for such delivery. The proof shows that such opportunity was offered in the instant case, because no charge of any kind was made for entering on said pier and removing goods therefrom to the land by vehicles.

And the same reasons which I gave in the M. L. C. No. 36 case are present in the instant case to sustain my opinion as expressed in that case.

Assuming that the other questions raised have been correctly decided, there can be no question about the right of a wharfinger to collect wharfage where one boat is made fast on the outside to another which is made fast to the wharf. The Kate Tremaine, supra; Robertson v. Wilder & Co., 69 Ga. 340; People ex rel. Board of State Commissioners v. Roberts, 3 Cal. Unrep. 372, 25 Pac. 496; Braisted v. Denton, supra; Taylor v. Atlantic Mutual Insurance Co., 37 N. Y. 275; The Wm. H. Brinsfield (D. C.) 39 Fed. 215; The Bark Francesca T., 9 Ben. 34, Fed. Cas. No. 5030; Ex parte Easton, supra; The several statutes of the state of New York, supra.

The third case is that of the Flower Lighterage Company, owner of the lighter Peerless.

[10] In this case the lighter Peerless, on April 4, 1923, arrived at and tied up to the West Pier, Erie Basin, for the purpose of receiving certain bales of wool, which were on storage in a warehouse maintained by the libelants, and continued loading such wool until the afternoon of April 4, 1923, when such loading was completed, after which the said lighter remained at said pier until the morning of April 5th, when she left. Payment of wharfage was demanded and refused.

Warehouse receipts were given by the libelants for such wool, which were surrendered on its delivery to said lighter, and from these receipts

it appears that said libelants were engaged in the business of maintaining storage warehouses; and it appears by other evidence given in this case that the libelants were also engaged in the business of wharfingers.

Without any consideration of general usage and custom, it appears in the instant case that a fixed charge per month was paid for the storage of each bale and an additional charge was made for labor, and this labor included the placing of such bales when removed at the string-piece.

Claimant contends that the libelants have no right to recover against it because it was the agent of the owner of said bales of wool, whereas it only alleged by its answer that it was engaged to receive, carry, and deliver the same to a specified destination, and that it was the duty of the libelants, as the owners of such warehouse, to furnish docking facilities.

I am unable to find that any contractual relation existed between the libelants and the claimant, and further I am of the opinion that the claimant was not the agent of the owner of said bales of wool for any purpose other than to receipt for the same, but was an independent contractor engaged by the owner of said bales of wool to transport said cargo for an agreed compensation.

I am therefore of the opinion that the libelants were under no obligation to the claimant; but if I am in error as to this, there can be no doubt that the libelants could be under no greater obligation to the claimant than they were under to the owner of said bales of wool.

From all the evidence I cannot find that the libelants ever agreed with the owner of said bales of wool that they would furnish them wharfage facilities for removing the same, nor can any such agreement be implied because such warehouse adjoined such pier, because ample facilities were offered to remove such bales of wool from such warehouse by vehicles, and libelants as warehousemen were not bound to furnish any other facilities.

This seems to be clearly shown in Muller v. Spreckels, 48 Fed. 574, where in the District Court for the Eastern District of Pennsylvania, a charterer of a boat, who was also the owner of a private pier, was held to be entitled to collect wharfage, where to make the delivery required by the charter it was necessary to enter the dock connected with the wharf.

Even if the claimant's contention be the fact that the piers and warehouses of the libelants are run as a unit, I have yet to find any authority which would deprive them of compensation for the services which they rendered in each capacity.

This seems to me to be clear because we all know that there are warehouses which have no wharves, and wharves that have no warehouses. Respondent did not plead, and there was no proof offered by the respondent to show, any usage or custom on the part of warehousemen to give wharfage facilities for the removal of goods stored in the warehouse; nor that the amount charged by the warehousemen for the storage of the bales of wool in the instant case was greater than that charged for like services by warehousemen who have no wharves from which any inference even could be drawn that the charge made by the libelant included wharfage services.

No citation of authorities is necessary to show the right of a wharfinger to collect wharfage from every vessel or floating structure that uses or makes fast to any pier, wharf, or bulkhead as such right has been recognized in admiralty from ancient times and by statutes of this state for the last 100 years.

I am not unmindful of the fact that the libelant, before the wharfage service was rendered to the M. L. C. No. 36, notified the Marine Lighterage Corporation that it would make its charges at the statutory rates, and might therefore have recovered on an implied contract, if pleaded, at those rates; but the allegation of the libel is:

"Which sum is reasonable and proper and the customary charge prevailing therefor at the time said wharfage services were furnished as aforesaid."

Therefore recovery cannot be had on an implied contract at the statutory rates but at the customary rates, and the notices to the other lightermen were to the effect that—

"The practices obtaining concerning the collection of wharfage charges by us at our Erie Basin property, Brooklyn, is continued as heretofore."

This fixed the customary rates for which the libelants were entitled to recover at the rates prevailing at their wharves and piers at Erie Basin immediately prior to January 1, 1923, which I have found were reasonable and proper. No proof has been offered before me as to these rates except that they were less than the statutory rates, and I will take proof thereof at any time, on five days' notice, unless the parties hereto stipulate the amount to be allowed in each decree.

The libelants are entitled to a decree in each of the three suits for the wharfage services therein alleged for the times therein stated, at the rates for said services that prevailed at said wharves and piers of the libelants immediately prior to January 1, 1923, with costs, and the petition of the claimant Marine Lighterage Corporation in the first suit against the Lloyd Royal Belge Société Anonyme should be dismissed, with costs against the petitioner. The petition of the claimant Moran Towing & Transportation Company against the Williams Steamship Company should be dismissed, with costs against the petitioner.

Settle decree on notice.